THE CITY OF JACKSONVILLE, *Plaintiff in Error*, v. L. D. SMOOT, *Defendant in Error*.

Opinion Filed May 10, 1922.

1. It is within the power of the legislature to alter or amend the government of a city and in doing so abolish an office which existed under the old government or charter. An office created by the legislature may be abolished by the legislature even during the term for which the incumbent was elected or appointed without violating any of the incumbent's constitutional rights in the absence of any constitutional limitations on the subject.

2. Even though an officer of a municipality who has been appointed for a definite term or by special statutory provision cannot be lawfully removed except for cause after full hearing, his office nevertheless may be summarily abolished when the proper municipal officers deem it advisable.

3. A municipal office is not properly in the constitutional sense and the legislature may abolish such an office at its pleasure.

4. The purpose of Chapter 7659 Acts of the Legislature 1917, was to vest in the City Commission of the City of Jackson-

ville complete supervision and control of the city's public service and to that end abolished all offices, boards, committees and agencies so that the commission might have full power in carrying out the plan for municipal improvement designed by the act to be accomplished.

5. In 1917 the City of Jacksonville under its then charter, Chapter 6357, Laws of Florida 1911, which created the office of "Commissioner of Public Works" through the instrumentality provided by law appointed or elected "S" to the position of "Commissioner of Public Works" for the term of one year. The term of office and salary to be paid were previously fixed by proper authority. During that year the legislature by Chapter 7659, Laws of Florida 1917, provided for the management and control of the public service or municipal departments of the City of Jacksonville by a plan known as the "Commission form of Government" which vested in the City Commissioners under the new form of government the power to distribute the duties and powers of the "Commissioner of Public Works" among such officers, heads of departments, clerks, superintendents, employees, engineers, foremen and laborers as the City Commissioners might deem necessary in the performance of its duties together with the right to fix their compensation. After that act became effective and in July, 1917, the City Commission did distribute the powers and duties of the "Commissioner of Public Works" among various officers and employees duly elected or appointed by the City Commission.

Held, That such act was a virtual abolishment of the office of "Commissioner of Public Works" and that "S" was not entitled longer to receive the emoluments of the office of "Commissioner of Public Works" to which he was appointed by the City of Jacksonville under the provisions of Chapter 6357, Laws of Florida, 1911.

A Writ of Error to the Circuit Court for Duval County; Daniel A. Simmons, Judge.

Reversed.

*P. H. Odom* and *L. S. Gaulden,* for Plaintiff in Error;

*W. M. Bostwick, Jr., Lake Jones* and *John E. Mathews,* for Defendant in Error.

ELLIS, J.—L. D. Smott recovered a judgment against the City of Jacksonville on February 8th, 1921, for the sum of $2,805.00 for salary and interest therein claimed by him to be due by the city and which accrued to him as Commissioner of Public Works from August 15th, 1917, to the 1st day of January, 1918.

The city took a writ of error to the judgment. The case of Mr. Smoot is clearly set forth in the fifth count of the declaration as amended which is as follows: "5th. And for a further and fifth count, plaintiff further sues the defendant for that under and by an Act of the Legislature of the State of Florida, known as Chapter 6367, (6357) Laws 1911, the office of "Commissioner of Public Works" for the City of Jacksonville, was created, and in and by said Act the Board of Bond Trustees of the City of Jacksonville was authorized and directed to fix the term or period and the compensation or salary of said office; that under and by virtue of the authority in it vested and to it delegated, the said Board of Bond Trustees did fix the period or term of said office at one year and the salary thereof at six thousand dollars per annum; and thereafter on or about the first day of January, 1917, the said plaintiff was elected to said office for a term or period of one year at a salary of six thousand dollars per annum; that the term for which plaintiff was elected began on the 1st day of January, 1917, and ended on December 31st, 1917; that plaintiff accepted said office and entered upon the duties thereof, and became the Commissioner of Public

Works of the City of Jacksonville for the said term and at said salary, and he continued to perform the duties thereof until on or about the 31st day of July, A. D. 1917, at which time the defendant refused to suffer or permit the plaintiff to continue to perform the duties thereof, and the said defendant on or about said date attempted to abolish said office and has from said time refused to per- mit the plaintiff to perform the duties of said office, and has failed and refused to pay to the plaintiff the salary due to him as Commissioner of Public Works of the City of Jacksonville from the 15th day of August, A. D. 1917, to the 1st day of January, 1918, although the plaintiff being the Commissioner of Public Works of the City of Jacksonville, has at all times been ready, able and willing and has always offered to continue to perform the duties of said office to the end of his term and thereafter until his successor was elected and qualified, or until the plain- tiff should be removed from office; that plaintiff has never been removed from said office; that during said term, from August 15th, 1917, to January 1st 1918, no other person was elected to said office and no other person has filled or held or attempted to fill or hold said office. And plaintiff has been deprived of his salary by the defendant which he is entitled to as Commissioner of Public Works of the City of Jacksonville from August 15th, 1917, to January 1st, 1918.

Wherefore, plaintiff brings this action and claims $5,000.00 damages." The action was begun upon the theory that the plaintiff held a contract of employment with the city which the latter breached. When the par- ties reached an issue there was a trial and verdict for the plaintiff which was set aside and a new trial granted, thereupon the plaintiff amended his declaration by adding

two counts, the fourth and fifth, basing his action upon his alleged right to receive the salary as incident to the public office to which he had been appointed. The first counts of the declaration were abandoned.

The city interposed several pleas, its principal defense being embodied in the seventh plea to the third count and made by apt words applicable to the fifth count of the declaration as amended, a demurrer to the plea was sustained.

The seventh plea was as follows: "And for a seventh plea to the third count of plaintiffs declaration, this defendant says that the plaintiff became Commissioner of Public Works by vote of the Board of Bond Trustees of the City of Jacksonville under authority vested in said Board of Bond Trustes by Section 5 of Chapter 6375 (6357) of the Laws of Florida, Acts of 1911.

That the office described in the declaration which was held and acquired by plaintiff and which is the employ- ment or position mentioned in said count of the declara- tion, was a public office, created by law, and the plaintiff as the holder of said office was not a mere servant or employee, but was a city official or office holder, the head of all municipal service departments, and the person in charge of the electric lighting, water service, and sewerage departments, under the direction of the Committee on Public Works, and plaintiff was responsible for the suc- cessful development and operation of every municipal service.

That plaintiff was chosen or selected for said position or public office by the said Board of Bond Trustees; that being an office holder and city official as aforesaid, and not a mere servant or employee, there was no contractural

relation whatever between plaintiff and defendant, and the plaintiff had no vested right to his office of Commissioner of Public Works, that the compensation mentioned in said count of the declaration is the salary attached to said office as an incident thereto by operation of law and not by contract; that being an office-holder in a public office to which the salary attached by operation of law as an incident to the office the plaintiff was not entitled, to said compensation attached to said office, in the event that said office should be abolished, or that he should be legally removed therefrom.

That by Chapter 6357 of the Laws of Florida, it was provided that plaintiff should be appointed by the Board of Bond Trustees and that the duties devolving by virtue of said act upon the Commissioner of Public Works, should be carried on under the direction of a Committee on Public Works created by said act.

That by Chapter 7659 of the Laws of Florida, the said Board of Bond Trustees, the Board of Health, the Committee on Public Works, the Board of Port Commissioners and each and every member and committee of said Boards were on the first Tuesday in July, 1917, abolished, and all of the powers and duties vested in each and every of said Boards and committees and members thereof were transferred to, vested in, and imposed upon the City Commission.

That in and by said Act of the Legislature it was provided that the City Commission should have the exclusive power to employ such chiefs and heads of departments, foremen, engineers, clerks, superintendents, employees and laborers as it might deem necessary for the performance of its dutis and fix their compensation, and should .

also elect all city officials not elected by the qualified electors, excepting only certain officials other than the plaintiff.

That in and by said act it was further provided that all officers, heads of departments and employees of said Boards and Committees so abolished should continue to hold and retain their offices and positions at the same rate of compensation as at that time prescribed until their successors were elected or appointed by the said City Commission.

That it was the purpose and intent of the said Act of the Legislature to change the entire plan theretofore provided by law for the management and control of the public service or municipal departments of the City of Jacksonville, and to abolish all of the former machinery, heads of departments, boards, committees and city officials having the government, management or control of municipal service, and to create a new form, plan or machinery for the management and control of municipal service departments by means of a City Commission, sometimes known as the Commission Form of Government.

That in order that the actual operation of the municipal service departments might not be interrupted and the users and consumers of electricity, water supply and sewerage service deprived of said commodities pending such time as the new City Commission might need or consume in taking over and establishing a system, and rules and regulations for the control of said municipal service departments, and the election of such heads of departments to operate or manage the same as the said City Commission might deem necessary for the performance of its duties, it was provided in said Act of the Legislature that the existing heads of departments, officers and em-

ployees of the former Boards and Committees so abolished as aforesaid should continue to hold and retain their offices and positions at the same rate of compensation as at that time or formerly prescribed until the successors were elected by or appointed by said City Commission.

That the said Act of the Legislature did give to the City Commission power and right to distribute the powers and duties of the Commissioner of Public Works, to-wit: the office held by plaintiff, among such officers, heads of departments, clerks, superintendents, employees, engineers, foremen and laborers, as the said City Commission might deem necessary for the performance of its duties, together with the right to fix their compensation.

That on July 14th, 1917, and prior to August 15th, 1917, the said City Commission did distribute the powers and duties of said Commissioner of Public Works among various officers and employees duly elected or appointed by said City Commission prior to said date; that in so doing as aforesaid the City Commission was acting lawfully and in pursuance of the right vested in it by Section 10 of said Act, and the said City Commission did thereby appoint successors to carry on the duties formerly performed by the plaintiff; that defendant has paid to plaintiff all salary accruing up to August 15th, 1917.

That by reason of the aforesaid action of the City Commission, the plaintiff did retain his office of Commissioner of Public Works pursuant to law at the same rate of compensation as at that time prescribed until his successor or successors were elected or appointed by the City Commission and has been paid and has received all salary accruing at said rate of compensation up to the time when his successor or successors were elected or appointed as afore-

said, and that by reason of said Acts of the Legislature the plaintiff has no legal right to the said salary incident to his office accruing after said time when his successor or successors were elected or appointed by the City Commission.''

We have separated from the pleadings, which were numerous and lengthy, those portions of them which state the plaintiff's cause of action and the city's defense.

In untechnical and succinct terms the case as presented by the record is simply the following:  In 1917 the City of Jacksonville, under its then charter, Chapter 6357, Laws of Florida, 1911, which created the office of ''Commissioner of Public Works'' through the instrumentality or machinery provided by law appointed or elected the plaintiff to the position of ''Commissioner of Public Works'' for the term of one year, the term of office, one year, and salary six thousand dollars per annum, having been previously fixed by proper authority.   That on July 31st, 1917, the city, through its then officers refused to permit the plaintiff to continue to perform the duties of the office to which he had been elected or appointed and refused to pay to him the salary for the remainder of the term.   The plaintiff suéd to recover it.

The city pleaded that by Chapter 7659, Laws of Florida, 1917, the entire plan theretofore provided by law for the management and control of the public service or municipal departments of the City of Jacksonville was changed, and all the ''former machinery, heads of departments, boards, committees and city officials having the government, management or control of municipal service were abolished'' and a ''new form, plan or machinery for the management and control of municipal service departments'' created by

means of what is known sometimes as the ''Commission Form of Government.'' That the act vested in the City Commissioners under the new form of government the power to distribute the duties and powers of the ''Commissioner of Public Works among such officers, heads of departments, clerks, superintendents, employees, engineers, foremen and laborers as the said City Commissioners might deem necessary for the performance of its duties together with the right to fix their compensation.'' That in July, 1917, the City Commission did distribute the powers and duties of the Commissioner of Public Works among various officers and employees duly elected or appointed by the City Commission, that such act was a virtual abolishment of the office of Commissioner of Public Works and the plaintiff did retain his office and receive the salary designated by the former government until his successors under the new form of government were appointed.

The substance of the plea is that under the Act of 1917 the City Commissioners being vested with the power to distribute between heads of departments, officers, and employees of their own choosing all the duties and powers of the ''Commissioner of Public Works'' under the Act of 1911, the exercise of such power was *ipso facto* an abolishment of the office. That although the plaintiff was elected or appointed for a certain term he held the office subject nevertheless to its abolishment, and could therefore not recover the salary that might have accrued for that part of the period of the original term during which the office was abolished.

The legislature has power to establish and to abolish municipalities, to provide for their government to prescribe their jurisdiction and powers and to alter and

amend the same at any time. Article VIII, Sec. 8, Constitution of 1885.

It was within the power of the Legislature, therefore, to alter or amend the government of the City of Jacksonville and if in doing so an office which existed under the old government was expressly or impliedly abolished the incumbent cannot complain, because the power of removal from office is incident to the power of appointment, and an office created by the Legislature may be abolished by the Legislature even during the term for which the incumbent was elected or appointed without violating any of his constitutional rights in the absence of any constitutional limitation on the subject. Even when an officer by reason of having been appointed for a definite term or by special statutory provision cannot be lawfully removed except for cause after a full hearing, his office may be summarily abolished when the proper municipal authorities deem it advisable. See Louisiana *ex rel.* Fisk v. Jefferson Police Jury, 116 U. S. 131, 29 Law Ed. 587, 6 Sup. Ct. Rep. 329; Prince v. Skillin, 71 Maine 361; Malone v. Williams, 118 Tenn. 390, 103 S. W. Rep. 798; Foster v. Jones, 79 Va. 642; Hall v. Wisconsin, 103 U S. 5, 26 Law Ed. 302; Attorney General v. Tillinghast, 203 Mass. 539, 89 N. E. Rep. 1058; 22 R. C. L. 579; 19 R. C. L. 936; Commonwealth v. Moir, 199 Pa. 534, 49 Atl. Rep. 351; 52 L. R. A. 837; State *ex rel.* Rylands v. Pinkerman, 63 Conn. 176, 28 Atl. Rep. 110, 22 L. R. A. 653; State *ex rel.* Quintin v. Edwards, 40 Mont. 287, 106 Pac. Rep. 695, 20 Ann. Cas. 239.

Was the office of Commissioner of Public Works for the City of Jacksonville abolished by Chapter 7659, Acts 1917, expressly or by necessary implication by vesting the power in the City Commission to distribute the functions,

duties and powers of such office among different officers and heads of departments, employees and laborers? There is no suggestion of bad faith in the City Commission in distributing the functions of the office among other officers and employees.

Chapter 6357, Acts 1911, created the office of Employment of Commissioner of Public Works for the City of Jacksonville, provided for the appointment of a person to fill the office by the Board of Bond Trustees which was empowered to fix the period of employment and salary within a certain amount per year. The act required that the person appointed should possess certain qualifications. He was required to possess "a *thorough* practical knowledge of machinery, electric lighting, water service and sewerage" and under the direction of the Committee on Public Works was directed to "have charge of these departments." He was also charged with the duty of successfully developing and operating "every municipal service including street paving, sewerage, water supply, electric lighting, and collection and destruction of garbage."

The municipality of the City of Jacksonville was established by act of the Legislature in 1887, Chapter 3775. Under its provisions the corporate authority of the city was vested in a Mayor and City Council, a Board of Public Works, a Comptroller, a Recorder, and a Treasurer. The legislative power of the corporation was exercised by a city council. The mayor was the chief executive officer and had supervision and control over all the officers of the city except the members of the City Council and of the Board of Public Works, which Board was elected by the City Council, no member of which was eligible for election. The Board of Public Works constituted that arm of the city government by which its public service duties

were performed. The Board had control over the construction, "supervision" cleaning, repairing, grading and improving of all streets, alleys, lanes, avenues, public wharves and landings, market houses and spaces, bridges, sewers, drains, ditches, water courses, sidewalks and curbing, also over the lighting of public places. It also had control and supervision over the construction, repairing, cleaning, lighting and heating of all public buildings and over all public improvements. It was vested with the power to organize and control, the fire departments, the water works, the gas and other illuminating works of the city and its jails and houses of correction and detention. The act created a Police Commission, the members of which were elected by the council and it was charged with the duty of organizing a police force and it had the power of removal. Provision was made for a municipal court, and the election of a City Marshal.

Such was the plan and outline of the city's government and governmental machinery. It seems to be consistent, true to the spirit of American Institutions, ample in its provisions and capable of functioning with a high degree of efficiency. But from the time the municipality was established assaults were made upon the charter, change was demanded, first one and then another experiment was tried. Nearly every session of the legislature saw some amendment or change in the charter. In fact it was amended at the same session two days after its enactment. But the amendments did not change the structure of the city government, its original outline and principles were preserved. The amendments were suggested by and doubtless seemed to be made necessary by political and economic conditions. Chapter 3952, Acts of 1889, provided for the issuing of bonds by the city and the creation of a Board

of Bond Trustees, who were required to receive the bonds and use and dispose of them for the purposes for which they were to be issued, approve contracts for carrying out the improvements directed by the City Council and Board of Public Works and audit all accounts and pay the same from the proceeds of the bonds. The first trustees were to be appointed by the Governor, thereafter vacancies were to be filled by the trustees.

In 1895 by Chapter 4498 the Board of Police Commissioners was abolished and was succeeded by the Board of Election Commissioners. In 1899 by Chapter 4872 the Board of Election Commissioners was abolished and their powers and duties conferred upon the Bond Trustees. It was given exclusive power to appoint all officers of the city not to be elected by the electors and all members of the police force, subject to approval by the council, and all officers belonging to the Department of the Board of Public Works were to be elected by that Board. The organization, number and compensation of members of the police force and fire department was to be regulated by the Bond Trustees. The Bond Trustees were also vested with management and control of the electric light plants, the power to fix the compensation of all employees or officers of the departments under its control and fix the charge for water and electricity.

By Chapter 4871, Acts 1899, the Board of Public Works was required to exercise control and management of the opening, construction and repair of streets, sidewalks or foot pavements. In 1901 Acts were again passed affecting the City of Jacksonville and its charter. Bonds were authorized to be issued, Chapter 5061. Acts for the collection of taxes and relating to health and defining the powers of the Mayor, the City Council and Board of

Public Works, regarding the improvement and beautify-ing of streets and sidewalks and the establishment of a public library, Chapters 5065, 5066, 5067, and 5096.

In 1903 an act was passed amending the charter and affecting the government, powers, duties, jurisdiction, offices, boards and elections of the city. That act, Chapter 5347, provided that the number, powers, duties, terms of office and time and manner of election of all boards and officers of the city whether created by or recognized in State legislation or city ordinance excepting only the legis-lative powers and duties of the City Council may be amended, changed or abolished by city ordinance and new boards and offices created. The city ordinance creating the Board of Bond Trustees was recognized. This act seemed to confer upon the municipality the power to man-age all its affairs, create boards, and offices, prescribe the powers, duties, terms of office and compensation of all officers or employees within such limits only as were defined by the legislative power conferred upon the City Council. It does not appear that any distinction was made between the Board of Bond Trustees first created by legis-lative enactment and the Board of Bond Trustees which was created by city ordinance.

In 1905 by Chapter 5502 provision was made for the issuing of bonds for extending water mains, sewerage, drainage, opening, grading and paving streets, filling lands for parks, bulkheading city lines abutting on creeks and waterways. The Board of Bond Trustees was made trustee of the bonds and vested with all the powers in reference thereto as had been vested in that board by law and ordinance in reference to existing bonds of the city.

Chapter 5504, Acts 1905, amended Chapter 5347, Acts 1903, affecting the municipal special elections to be held

for the ratification or rejection of any proposed change in the boards, offices or administration departments.

Other acts were passed in 1905 affecting the sale of lost and unclaimed property, empowering the city to make appropriations for hospitals and to issue bonds and vesting the Board of Bond Trustees with the same powers in reference thereto as it possessed with reference to other bonds, and empowering the city to extend its corporate limits.  Chapters 5500, 5501, 5502, 5503.

In 1907 an act was passed relating to the city wards.

In 1911, by Chapter 6356 power was given to the Board of Bond Trustees to establish and extend the waterworks system and to authorize any person so desiring to bore artesian wells within the city limits.

By Chapter 6357 the Board of Bond Trustees was reorganized and a bond issue provided.  The Board of Trustees was vested with all the powers in reference thereto as was vested in it by "law and ordinance" in reference to existing bonds of the city.  The Board of Public Works was abolished and all its duties were required to be performed by the Board of Bond Trustees.  A Committee on Public Works was required to be formed from that Board, which committee should perform all the duties and exercise all the powers vested in the Board of Public Works, but under the direction and control of the Bond Trustees.  A Commissioner of Public Works was required to be appointed by the Board of Bond Trustees and his salary and period of appointment determined by the Board within the limit of six thousand dollars per annum as to salary.  Reference has been made as to the qualifications required of the person so employed.  He was given charge, under the direction of the Committe on Public Works, of

the departments which theretofore managed such service, and as above stated was charged with the duty of successfully developing and operating *"every* municipal service including street paving, sewerage, water supply, electric lighting and collection and destruction of garbage.'' A Board of Health was created to consist of three members of the Board of Bond Trustees and its powers were defined.

Another bond issue was provided for and the Bond Trustees were vested with the same powers in reference thereto. The Trustees were vested with discretionary powers as to the construction or laying of sewers in the city and it had supervision over the matter of letting contracts for all improvements, material, supplies and work of all kinds for any purpose. The act was a complete revision of the charter of the city in so far as it related to such public service activities as embraced the waterworks and electric systems, streets and paving, fire department and the collection and destruction of garbage. All these activities were placed under the direction of the Bond Trustees. The Commissioner of Public Works discharged his duties under the directions of the Committee on Public Works which was elected by the Bond Trustees from among its own members.

In 1913 so much of the Act of 1911, Chapter 6357, as vested in the Board of Trustees discretionary and supervisory power in the matter of laying and constructing sewers, was repealed.

By Chapter 6705, Acts 1913, the charter of the city was again amended in the matter of the numbers, powers, duties and terms of office and the time and manner of election or appointment of all boards and officers of the

city vesting in the City Council power by ordinance to amend, change and abolish all boards and offices and create new ones subject to approval by the electors at a city election.

In 1915 by Chapter 7174 bond issues were provided to be made from time to time as may be determined by ordinance within certain limitations as to yearly issues. And by Chapter 7175 pensions were provided for members of the fire department and by Chapter 7176 provision was made for the pensioning and relief of the members of the police department.

At the same session of the Legislature, Chapter 7177 was passed which provided for the creation of a Board of Commissioners to consist of five members in whom should be vested all the powers and duties and administrative functions which theretofore were vested in officers and boards and commissions of the city except the legislative power of the Council and power of the Municipal Judge. The board was to be known as the Municipal Commission of the City of Jacksonville. The act, however, was made subject to ratification by the electors of the city. It is stated in the brief of counsel that the act was not ratified.

During the session of the Legislature of 1917 several acts were passed affecting the City of Jacksonville, authorizing it to aid public safety committees, relating to the police pension and relief fund, relating to the removal of members of the fire department and creating a City Commission for the city. The latter act was passed May 30, 1917. It was number 7659 and became effective immediately.

Through many years of charter building, repairing, amending and changing, the city finally arrived in 1917

at a form of government in many respects unusual, extra-ordinary and of almost fundamental difference from the system under which the city had been organized and to which the people had been accustomed.

The act provided for the creation of a City Commission to consist of five members, first to be elected by the City Council, thereafter to be elected by the electors of the city.

In this commission was vested practically the entire administrative functions of the city government. It had the power to elect one of its own members chairman and elect other officers for its own organization; three constituted a quorum for the transaction of all business and each member was to receive a salary of three thousand dollars per annum.

Until 1911 the municipality discharged its administrative functions through boards or committees. There was the Board of Bond Trustees, the Board of Public Works, the Board of Health, the Board of Port Commissioners, the Election Commissioners and the Police Commission. Some were created by statute, others by ordinance, some filled by election, others by appointment or election by the City Council.

In that year there began a concentrating of powers in one board, the Board of Bond Trustees.

The Act referred to, Chapter 6357, Acts 1911, may be regarded as suggestive of the Act of 1917, Chapter 7659. Under the latter Act the "Bond Trustees," the Election Commissioners, the Board of Health, the Committee on Public Works and the Board of Port Commissioners were abolished. All the powers and duties exercised and per-

formed by them were transferred to and imposed upon the City Commission.

Under the Act of 1911 the Commissioner of Public Works, an office created by statute, was appointed by the Bond Trustees, but under the provisions of the statute had charge of the departments embracing the water, sewerage and electric service, only under the direction of the Committee on Public Works, a board consisting of members of the Board of Bond Trustees. Responsibility for the successful development and operation of every municipal service was placed upon him.

Now, by the Act of 1917, the Board whose duty it was to elect the commissioner, the committee under whose supervision and direction he was required to perform his duties, was abolished and the services of every kind which he was required to perform were transferred to and imposed upon the City Commission primarily and the officers and employees whom they might deem proper to select.

The Commissioner of Public Works was an officer of the department of Bond Trustees and the department was abolished.

To the City Commission was transferred all the administrative functions of the city government. It was vested with control of the inspection of buildings, plumbing and electric wiring, control and supervision of the city police force, water works and electric systems, streets, alleys, parks and municipal docks, sewers, public buildings and fire departments. It was charged with the duty of preparing the estimate of expenses to which the city might be subjected in the administration of its affairs by the commission and other officers of the government, who if not appointed by the commission were required to be elected by the qualified electors of the city.

Members of the City Council and City Commission were to be elected by the electors, but the members of the police force, trustees of the Free Public Library, members of the Board of Charities, the City Auditor, City Attorney and Mayor, all are chosen by the City Commission. It has the exclusive power to employ such chiefs and heads of departments, foremen, engineers, clerks, superintendents, employees and laborers as it may deem necessary for the performance of its duties. As its duties either directly or indirectly through such trustees of a free public library and board of charities that it appoints, embraces every municipal activity except the enactment of ordinances, the power of the Commission pervades and its influence is felt in every department of the city government from the estimate of the expense necessary to carry on the year's business of the city to the laying and collection of the taxes imposed upon the citizens to pay such expense. And as an ordinance is effective in the proportion that it is enforced according to its spirit it may be said that even the power of legislation is in some measure affected by the full administrative power vested in the commissioners.

The purpose of the Act was to abolish among others boards and agencies of the city government, the Board of Bond Trustees and all committees, offices, employments and agencies used or controlled by it and vest the powers which they exercised in the City Commissioners, and to vest in them complete supervisory power and control over all public service devolving upon the city. In such case all boards, committees, offices and agencies of the city government except those expressly exempted from the provisions of the act were abolished and the powers exercised by them and the duties they performed became vested in and to be discharged by the City Commission.

It is barely possible that by literal interpretation of the words of the act some obscure and inconsequential service may be found to have escaped mention among the many duties and powers which the general provisions of the act carried to the City Commission and was seemingly left for performance by the Commissioner of Public Works, but in the view we take of the history of charter building for the municipality of Jacksonville and the very evident trend and purpose of the many acts of the Legislature, the purpose of Chapter 7659 was to vest in the City Commission complete supervision and control of the city's public service and to that end abolish all offices, boards, committees and agencies so that the commission might be given a "free hand" in carrying out the plan for municipal improvement and betterment of conditions seemingly desired by the Legislature.

A municipal office is not property in the constitutional sense, and the Legislature may abolish such an office at its pleasure. See 19 R. C. L. 936; Booten v. Pinson, 77 W. Va. 412, 89 S. E. Rep. 985, L. R. A. 1917A, 1244.

The Board of Bond Trustees had the power to employ the Commissioner of Public Works and to fix the period of his employment and to remove him for cause. This power is transferred to the City Commission. No term of office was fixed by law and the power to appoint carries with it as incident thereto the power of removal. Such power vested in the Board of Bond Trustees could not be limited by any action taken by such Board as that of fixing the commissioner's term of office at one year or ten. See State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. Rep. 234. A case which upon the point under consideration, viz: the power to appoint to office and fix the term of office carries with it the power of removal at pleasure,

we think is well considered, although we may differ from the views expressed as to the construction by this court of our own constitution.  See also Wright v. Gamble, 136 Ga. 376, 71 S. E. Rep. 795, 35 L. R. A. (N. S.) 866.

So that if it were a question of removal from office it would seem that the City Commission which succeeded to the powers of the Bond Trustees could remove the officer without notice.  But the view we take of the act is that in creating the extraordinary and unusual government for the city it was the purpose of the act to abolish the office of Commissioner of Public Works and empower the Commission to divide the duties and distribute the powers exercised by the incumbent · among as many persons as their judgment might· prompt and the patience of the people condone.

Besides the act contains a repealing clause whereby all laws and parts of laws in conflict with its provisions are repealed.  The provisions of the Act of 1911, Chapter 6357, providing for the appointment of a Commissioner of Public Works and placing him in control of so many of the city's activities is in direct conflict with the provisions of Chapter 7659 providing for the discharge of all · such functions through a City Commission.

The plea was a valid defense and the demurrer thereto should have been overruled, so the judgment of the court is reversd.

Browne, C. J., and Taylor, Whitfield and West, J. J. concur.