170 So.2d 827 (1964)
Charles F. HALL et al., Appellants,
v.
Edwin E. STRICKLAND, Appellee.
No. 33593.
Supreme Court of Florida.
December 2, 1964.
Rehearing Denied February 10, 1965.
*829 Thomas C. Britton, Miami, for appellants.
Hendricks & Hendricks, Miami, for appellee.
PER CURIAM.
This cause is before the court on direct appeal from a decree of the Circuit Court of Dade County, construing a controlling provision of the Florida Constitution. Jurisdiction of the appeal attaches under Section 4(2), Article V of the Constitution, F.S.A.
This litigation arose out of an amendment to the Home Rule Charter of Dade County with respect to the Metropolitan Court of Dade County. This court was created by the Home Rule Charter of Dade County pursuant to the organic authority granted by the so-called Home Rule Amendment, Section 11, Article VIII, Florida Constitution, to "create new courts and judges * * *".
Under the charter as originally adopted in 1957, the office of judge of the Metropolitan Court was an appointive one, the appointing authority being the County Commission of Dade County. The amendment to the charter carried forward to a limited extent the appointive power of the County Commission; however, a major change resulted from the adoption of a version of the so-called Missouri Plan for selection of judges. Under the plan adopted by the electorate of Dade County, each appointee to the office of Metropolitan Court Judge who desires to continue in office is required to submit to the electorate "at the first state primary election held more than one year after his appointment" the question of whether or not he or she shall be retained in office, and "shall be subject to approval or rejection in a like manner every sixth year * * *". The rejection of a judge by a majority of the electorate at the polls, or the death, resignation, retirement, recall or removal from office of an incumbent, results in a vacancy in the office to be filled by appointment by the County Commission. The Commission is required to make the appointment from a list of three nominees for each vacancy prepared by the Metropolitan Court Nominating Council  a body created by the amendment to the charter and composed of the presiding circuit judge, three lawyers, and five laymen.
As noted above, both the initial approval (or rejection) of an appointment by the electorate, and the subsequent approval (or rejection) of the incumbent every sixth year (when the incumbent runs on his record, so to speak) must be made at the appropriate "first state primary election." This election is held on the first Tuesday after the first Monday in May in general-election years. Section 100.061, Fla. Stat., F.S.A. In line with this tying-in of the tenure of the judgeships to the first week in May, the amendment established a definite cycle for the beginning of the terms of the judges to be selected under the new plan by declaring that "The offices of all incumbent judges of the Metropolitan Court become vacant on May 1, 1964 * * *."
*830 The appellee, plaintiff below, was one of thirteen judges holding office at the time of the adoption of the amendment. This number of judges had been determined by the County Commission as the number necessary or desirable for conducting the business of the Metropolitan Court, as authorized under the Charter. The Metropolitan Nominating Council recommended that this number of judges be continued and submitted the names of thirty-nine nominees from which the County Commission could, if it chose, select thirteen judges. The County Commission followed the recommendation of the Council as to the number of judges to be appointed; and by resolution dated July 8, 1964, appointed thirteen persons from the list submitted by the Council to serve as judges of the Metropolitan Court, and to take effect July 14, 1964.
The appellee and the twelve other incumbents  all of whom had been serving as "hold-over" judges pending the appointment of their successors, as authorized by the amendment  were among the thirty-nine nominees submitted by the Council to the Commission. Only six of the incumbents were, however, selected by the Commission; and the appellee was not one of them.
This suit seeking declaratory relief and attacking the charter amendment on various grounds was filed by the appellee on July 10, 1964. The cause was heard by the Chancellor on the complaint, and the answer and motion to dismiss of the appellants, defendants below, who are the Mayor and members of the Board of County Commissioners of Dade County. In his decree he found that the charter amendment was a valid and constitutional enactment of the electors of Dade County except as it provided that the offices of the incumbent judges "became vacant" on May 1, 1964. He held that this portion of the amendment was a violation of Section 24 of Article V of the Florida Constitution "as a reduction in the number of judges of the Metropolitan Court which shortens the term of the judges then in office." This appeal followed.
Directly involved is the question of whether or not judges of the Metropolitan Court of Dade County, Florida, are within the purview of Article V of the Constitution of Florida. Section 1, Article V, supra, provides:
"Courts. The judicial power of the State of Florida is vested in a supreme court, district courts of appeal, circuit courts, Court of Record of Escambia County, criminal courts of record, county courts, county judges' courts, juvenile courts, courts of justices of the peace, and such other courts, including municipal courts, or commissions, as the legislature may from time to time ordain and establish."
It is noteworthy that Section 1 does not relate to the Metropolitan Court, nor is such a court or commission ordained and established by the Legislature of Florida.
Section 11, Article VIII, Constitution of Florida (Dade County Home Rule Charter) among other things provides:
"(b) May grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County and provide suitable penalties for the violation thereof; to levy and collect such taxes as may be authorized by general law and no other taxes, and to do everything necessary to carry on a central metropolitan government in Dade County."
We take note that Article V and Article VIII were both adopted in the general election of 1956 and should be considered in pari materia. Therefore, we are forced to the conclusion that such sovereignty as is possessed by the Metropolitan Court was transmitted exclusively by Section 11, Article VIII of our Constitution, and no part of such sovereignty was deraigned *831 under Article V. We therefore hold that the Metropolitan Court was created by and operates within the exclusive orbit of Section 11, Article VIII, and its judges deraign no part of their powers, duties, responsibilities, shelter or protection under Article V. Accordingly, the judges of the Metropolitan Court having no authority or responsibility under Article V cannot invoke any part of it as a shelter for judges situated as the one now under consideration.
We come then to the question of whether or not the people of Dade County had the right under Section 11 of Article VIII, supra, to amend their charter and terminate the tenure of judges holding office created by the Metropolitan government of Dade County. We think they did. Under the system authorized to be established under Article VIII, insofar as the local affairs, property and government of Dade County are concerned, and subject to the limitations therein provided, the ordinances not infrequently take the place of what in other counties is accomplished by local bill legislation. Ordinarily, special courts, in response to local needs, are handled in such manner.
Being of legislative origin, the Metropolitan Court is wholly within the legislative control of Dade County. As stated in City of Jacksonville v. Smoot, 83 Fla. 575, 92 So. 617,
"* * * the power of removal from office is incident to the power of appointment, and an office created by the Legislature may be abolished by the Legislature, even during the term for which the incumbent was elected or appointed, without violating any of his constitutional rights, in the absence of any constitutional limitation on the subject."
And so it is that the Metropolitan Court of Dade County, deriving its sovereignty exclusively under Section 11 of Article VIII, has no dependence on Article V and the provisions of Article V will not apply to nor be available to the judges of such court; we further hold that the Metropolitan Court, being of legislative origin, was subject to legislative change during the term of its incumbent judges. City of Jacksonville v. Smoot, supra. To hold as did the chancellor that a legislative body must postpone a reorganization, for the public welfare, of a court which is its creature, until the end of the term of every incumbent judge, is to read into the constitutional provision a meaning that is not there, in violation of the fundamental principle that "the terms of an organic provision will not be strained to imply a limitation upon the lawmaking power * * *." State ex rel. West v. Butler, 70 Fla. 102, 69 So. 771.
The appellee, in support of the decree here reviewed, cites decisions from other jurisdictions holding that the legislature cannot, under the guise of a change in the law which is "colorable" only, shorten the term of an incumbent. Traywick v. Gilkey, 167 Tenn. 465, 71 S.W.2d 676. But this case, while holding that an act reducing the number of highway commissioners was a "colorable" change only and not a "real and substantial" change in the law, pointed out that a change in the method of selection of the officer is a fundamental change sufficient to justify the shortening of the term of office of the incumbent. Cf. Loring v. McGinness, 163 Tenn. 543, 44 S.W.2d 314. Later, another Tennessee decision, Caldwell v. Lyon, 168 Tenn. 607, 80 S.W.2d 80, 100 A.L.R. 1152, reaffirms the view of that court that a change in the manner of the selection of the office-holder is "clearly fundamental." See also Millard v. Guy, 334 Mich. 694, 55 N.W.2d 210, involving a change from an appointive to an elective office, and Gorham v. Robinson, 57 R.I. 1, 186 A. 832, in which the power of the legislature to shorten the term of office is reviewed at length.
From what has been said before, it is clear that the charter amendment in question was not "colorable" only; it made a substantial change in the method of selection of the judges of the Metropolitan *832 Court. Although the amendment, in terms, provided only that the offices of the incumbents would "become vacant" on May 1, 1964, for all practical purposes the office of judge of the Metropolitan Court of Dade County, as it existed prior to the amendment, was terminated and the new type of judgeship, emanating from a new plan of selection provided for in the charter revision came into being on May 1, 1964. It is conceded that the legislature may abolish a judgeship which it has created; and it follows that the electorate of Dade County could provide for the new judges to be appointed on or soon after May 1, 1964, so as to begin the new cycle of elections of judges provided for in the revised plan  which, as noted, is tied into the first primary election in May of the appropriate year. Cf. Klein v. Schulz, Fla. 1956, 87 So.2d 406, in which this court approved a legislative plan changing an appointive judgeship to an elective one and cutting short the term of the incumbent judge.
In summary, we hold that the appellee cannot avail himself of the protection of Section 24, Article V, since his tenure and functions are exclusively within the orbit of Section 11 of Article VIII, and we further hold that the Metropolitan government provided the office in the first place by a form of legislation and for the reasons above mentioned had the right to take it away.
We have also considered the cross-assignments of error argued by the appellee and find no error in the decree upholding the validity of the charter amendment, as against the attacks on other grounds.
For the reasons stated, the decree here reviewed must be reversed insofar as it holds invalid that portion of the charter amendment terminating the offices of the incumbent judges, including the appellee's term of office as of May 1, 1964. In all other respects, it is affirmed.
Affirmed in part and reversed in part.
DREW, C.J., and O'CONNELL and CALDWELL, JJ., concur.
THORNAL, J., concurs specially with opinion.
HOBSON, J. (Ret.), concurs specially with opinion, sitting for THOMAS, J., absent on account of illness.
ROBERTS, J., dissents with opinion.
ERVIN, J., dissents and agrees with ROBERTS, J.
THORNAL, Justice (concurring specially).
I agree because of the prevailing view expressed in In re Petition of Farmer, Fla., 130 So.2d 601. I dissented there but feel bound by the majority decision. Hence I concur here.
HOBSON, Justice (Ret.) (concurring specially).
I concur because I feel bound by our decision in the In re Farmer case, supra, although I presently question the soundness of our reasoning and the correctness of our conclusion therein.
ROBERTS, Justice (dissenting).
Section 1, Article V, Constitution of Florida, does not include by specific designation the Metropolitan Court of Dade County, but here we have held such in effect to be in the nature of a municipal court. In Boyd v. County of Dade, 123 So.2d 323, this court said:
"The Metropolitan Court of Dade County was not mentioned as such when Article V was adopted. We interpolate here to state that we have reached the conclusion, for the reasons which we will announce hereafter, that, insofar as the right to trial by jury is concerned, offenses denounced by the *833 Dade County Traffic Ordinances are governed by the principles long since announced and consistently adhered to with reference to offenses against municipal ordinances."
Again, in the same opinion, this court said:
"Both provisions may be given full effect by holding, as we do, that the provisions of Article V, vesting in the circuit courts final appellate jurisdiction in appeals from municipal courts, include and embrace the Metropolitan Court of Dade County". (Italics supplied.)
And again, in the same case, we said:
"Insofar as the right to trial by jury is concerned  for these offenses denounced by the ordinance of Metropolitan Dade County  the same rules apply to it as apply to municipal courts. The offense denounced is purely local in nature, the territorial limits of the court's jurisdiction not extending beyond the borders of Dade County." (Italics supplied.)
If the foregoing Boyd v. County of Dade, supra, is not sufficient authority, and I think it is, for including the Metropolitan Court within the purview of Article V by virtue of its being a municipal court, we should examine the question of whether or not the Metropolitan Court is included in the phrase
"other courts * * * as the legislature may from time to time ordain and establish."
Under the system authorized to be established under Article VIII insofar as the local affairs, property and government of Dade County are concerned, and subject to the limitations therein provided, the ordinances not infrequently take the place of what in other counties is accomplished by "local bill" legislation. Ordinarily special courts, in response to local needs, are handled in such manner, but since the power for passing local legislation in Dade County has been transferred by constitutional amendment from the Legislature of Florida to the County of Dade, it is my view that the local Metropolitan Court created by Metropolitan Dade County is a creature of legislative power.
I, therefore, would hold that the Metropolitan Court of Dade County is the counterpart of municipal courts, is a creature of the legislative process in Dade County dealing with local legislation, and being either a municipal court or a court born of the legislative process and being thus included in Section 1 of Article V, the Metropolitan Court of Dade County is a part of the judicial system of the state as designated in Section 1, Article V, supra, and its judges are entitled to claim the benefit of Section 24, Article V, supra, which provides
"Any law reducing the number of judges of any court shall not shorten the term of any judge then in office."
Subsection 5 of Section 11, Article VIII, Constitution of Florida, among other things, says
"* * * the home rule charter provided herein shall not conflict with any provision of this Constitution * * *."
It appearing that the appellant is a duly commissioned judge of the Metropolitan Court of Dade County, holding an unexpired portion of that commission, his remaining term could not be disturbed. A contrary view could only mean that the commission now held by the incumbent is little more than a scrap of paper.
I have also considered the cross assignments argued by the appellee and see no error in the decree upholding the validity of the charter amendment as against the attacks on other grounds.
I would approve the judgment of the lower court, and being unable to agree to the views of the majority, must respectfully
Dissent.
ERVIN, J., concurs.