173 So.2d 138 (1965)
COUNTY OF DADE, State of Florida, Appellant,
v.
Helen SAFFAN, Appellee.
No. 33294.
Supreme Court of Florida.
March 17, 1965.
Rehearing Denied April 12, 1965.
*139 Thomas C. Britton, County Atty., William W. Gibbs, Asst. County Atty., Richard E. Gerstein, State Atty., and Joan Odell Franscella, Asst. State Atty., for appellant.
Leonard H. Rubin, Miami, for appellee.
O'CONNELL, Justice.
The appellant County seeks review of that decision of the District Court of Appeal, Third District, reported at 159 So.2d 102. Appellant contends that said decision construed a controlling provision of the Florida Constitution. We accept jurisdiction for this reason.
Helen Saffan, appellee, was convicted in the Dade County Metropolitan Court for violation of a county ordinance. She appealed to the circuit court, which court dismissed the appeal on the ground that appellee failed to file the notice of appeal within the 20-day period prescribed by Section 6.02(f) Article VI of the Home Rule Charter of Dade County.
On review the District Court reached the conclusion that the time for taking appeals from the Metro Court was governed by Section 932.52, F.S.A., which statute prescribes a 30-day appeal period in appeals from municipal courts. Since the appellee did not file her notice of appeal within the 30-day period the District Court upheld the dismissal of the appeal by the circuit court.
The question for decision by this court is whether appeals from the Metro Court are governed by the provisions of the Home Rule Charter, adopted pursuant to Section 11, Article VIII, Florida Constitution, F.S.A. or by Section 932.52.
In reaching the conclusion that Section 932.52 was controlling the District Court reasoned: (1) that Section 932.52 being a general act would control unless superseded by the Home Rule Charter; and (2) that the charter did not supersede the statute because that court felt that Section 11 (1) (f), Article VIII, only empowered the people of Dade County to designate the court to hear appeals from the Metro Court and did not authorize them to prescribe in the Home Rule Charter the conditions and time for taking appeals from the Metro Court.
We cannot agree with the District Court for two basic reasons.
First, Section 932.52 by its very terms is not, and was not intended to be, applicable to appeals from the Metro Courts *140 of Dade County. This section governs appeals from municipal courts. The Metro Courts are no more municipal courts than the metropolitan government is a municipal government, or the Home Rule Charter can be said to be a municipal charter.
True, the Metro Courts are similar to municipal courts in that both are only empowered to try violations of ordinances of the political subdivision of which they are a part, rather than violations of state laws. But there the similarity ends.
The Metro Courts were created by the people of Dade County through the adoption of the Home Rule Charter under authority granted by Section 11, Article VIII of our state constitution. Municipal courts are created either by the legislature or authority granted in legislative acts pursuant to section 8, Article VIII.
The metropolitan government of Dade County has some of the characteristics of both the traditional municipal and county governments, but it cannot be said to be either of the traditional forms. It is rather a new form of government in our state found only in Dade County. Any effort to describe it or liken it to either municipal or usual county government is likely to be inaccurate, erroneous and lead to confusion as it has here.
The Metro Courts were neither visualized nor contemplated when the legislature adopted Section 932.52, they are not municipal courts and therefore Section 932.52 is not applicable to them.
We have not overlooked the statement which we made in Boyd v. County of Dade, 123 So.2d 323 at page 326, to-wit:
"* * * the provisions of Article V, vesting in the circuit courts final appellate jurisdiction in appeals from municipal courts, include and embrace the Metropolitan Court of Dade County * * *."
This statement was made in a discussion relating to the status of the Metro Courts as trial courts under those provisions of Article V, Fla. Const., which deal with the appellate jurisdiction of the circuit courts and this court. The above quoted statement was and is unnecessary to the decision that the Metro Courts were trial courts in the constitutional sense. We are now convinced that this statement was both unnecessary and incorrect and recede from it.
This brings us to our second point of difference with the opinion of the District Court.
The power of the circuit court to hear appeals from the Metro Courts does not arise under the provisions of Article V as suggested by the District Court. Nor does it vest by reason of any state statute. As we said in Hall v. Strickland, Fla., 170 So.2d 827, opinion filed December 2, 1964, "* * * the Metropolitan Court was created by and operates within the exclusive orbit of Section 11, Article VIII * * *."
The jurisdiction, i.e., power and authority, of the circuit court to hear appeals from the Metro Court exists solely by reason of the adoption of the Home Rule Charter, and specifically Section 6.02 thereof. The vesting of this appellate jurisdiction was authorized and taken pursuant to Section 11(1) (f), Article VIII, which authorizes the creation of the Metro Courts and further provides that the Home Rule Charter may "* * * confer appellate jurisdiction on such courts * * *." A reading of the whole of Section 11(1) (f) will indicate that the "such courts" referred to in the above quoted provision means state courts.
The District Court was of the view that the above quoted provision only authorized the Metro Charter to designate the court to hear appeals from the Metro Courts, but not to establish time for taking appeals. The District Court also stated that the time for taking appeals is determined by the general laws of this state.
It is true that appeal time, having been held to be jurisdictional, is a matter *141 for legislative act, not court rule. If there was a valid general act of the legislature governing appeals from Metro Courts it would probably settle this issue. But the fact remains that there is no such act, and because of the provisions of Section 11(6), Article VIII, we seriously doubt that the legislature could pass one which relates only to time for appeals from the Metro Courts.
Thus, unless the above quoted provision of Section 11(1) (f) be construed to authorize the Home Rule Charter to set the time for taking appeals, as well as to designate the appellate court to hear such appeals, there would presently exist no valid provision of law determining the appeal time from Metro Courts.
We therefore believe that the words "confer jurisdiction" in the above quoted portion of Section 11(1) (f) must be construed to include the authority to establish the appeal period as well as to designate the appellate court.
For the foregoing reasons the opinion and decision of the District Court is reversed with directions to affirm the judgment of the circuit court.
DREW, C.J., and ROBERTS and THORNAL, JJ., concur.
ERVIN, J., concurs specially with opinion.
CALDWELL, J., dissents with opinion.
ERVIN, Justice (specially concurring).
I agree with the opinion of Justice O'Connell but add that I think Section 11 (1) (f), Art. VIII and pertinent provisions of Art. V of the Constitution of Florida should be read together. This results in the Metropolitan Court of Dade County being a part of the judicial system of the State and subject to applicable unrepugnant provisions of both Articles V and VIII. Under such construction the Legislature by a valid act could fix the time of appeal from the Metro Court assuming that the same is not covered by the rules of this Court prescribing practice and procedure pursuant to Sec. 3, Art. V, State Constitution. I also believe the authority in Section 11(1) (f), Art. VIII for the Metro Charter to "confer appellate jurisdiction on such [Metro] court" is permissive only and is subject to the overriding authority of the State Legislature under Art. V and to the limitations in said Article, to provide the appellate jurisdiction of state courts. In other words, the Metro Charter governs in respect to such appellate jurisdiction from Metro Courts until the State Legislature otherwise validly provides.
CALDWELL, Justice (dissenting):
I would hold the statute of general application, F.S. 932.52, F.S.A., fixes the time within which appeals may be taken from the Metropolitan Court of Dade County.