The Honorable Cindy Lederman Chair, Miami-Dade Community Based Care Alliance Juvenile Justice Center 3300 Northwest 27th Avenue Miami, Florida 33142
Dear Judge Lederman:
As Chair of the Miami-Dade Community Based Care Alliance and on behalf of the Alliance, you ask substantially the following question:
 Does the recent amendment to section 20.19(6), Florida Statutes, apply to current members of community alliances?
During the 2004 legislative session, the Legislature amended section20.19(6), Florida Statutes.[1] As amended, section 20.19(6)(f), Florida Statutes, provides:
 "A member of the community alliance, other than a member specified in paragraph (d), may not receive payment for contractual services from the department or a community-based care lead agency."
You ask whether such an amendment applies to the current alliance membership. Since your inquiry concerns an amendment to section 20.19, Florida Statutes, which creates the Department of Children and Families (department) and prescribes the duties and responsibilities of that department, including the establishment of community alliances, this office contacted the department on this issue. The department has advised this office that it concurs in your request for an opinion of this office.
Section 20.19(6), Florida Statutes, requires the Department of Children and Families, in consultation with local communities, to establish community alliances of the "stakeholders, community leaders, client representatives and funders of human services in each county to provide a focal point for community participation and governance of community-basedservices." (e.s.) The duties of a community alliance include:
 "1. Joint planning for resource utilization in the community, including resources appropriated to the department and any funds that local funding sources choose to provide.
 2. Needs assessment and establishment of community priorities for service delivery.
 3. Determining community outcome goals to supplement state-required outcomes.
 4. Serving as a catalyst for community resource development.
 5. Providing for community education and advocacy on issues related to delivery of services.
 6. Promoting prevention and early intervention services."[2]
Section 20.19(6)(d), Florida Statutes, provides that the initial membership of an alliance includes the district administrator and a representative from each of the following: county government; the school district; the county United Way; the county sheriff's office; the circuit court corresponding to the county; and the county children's board, if one exists. Pursuant to section 20.19(6)(e), Florida Statutes, after its the initial meeting an alliance may increase its membership to include individuals and organizations representing funding organizations, who are community leaders, who have knowledge of community-based service issues, or who otherwise have perspectives enabling them to accomplish the duties assigned to the alliance. Members are subject to the provisions of part III of chapter 112, the Code of Ethics for Public Officers and Employees, and must act consistently with department policy and state and federal laws, rules, and regulations.[3] This office has previously stated that the members of such alliances are officers subject to the dual office-holding prohibitions of Article II, section 5(a), Florida Constitution.[4] You have advised this office that the term of office for community alliance members is generally two years.
As noted above, the 2004 Legislature amended section 20.19(6), Florida Statutes, to prohibit a member of a community alliance, other than a member specified in paragraph (d), from receiving payment for contractual services from the department or a community-based care lead agency. Thus, the only exception recognized by the act is for those members specified in section 20.19(6)(d). Where a statute sets forth exceptions, no others may be implied.[5] The staff analysis for the bill states that the bill prohibits "entities that receive funding from either the Department of Children and Family Services or a community-based lead agency from serving on the community alliance."[6] You ask whether a distinction may be made for a member who is an officer or employee of an entity receiving funding from the department or a community-based lead agency because the member did not personally sign the contract or was not directly involved in negotiations for a contract. No distinction is made within the statute and this office cannot read such an exception into the statute. Nor can this office read such an exception into the statute for foster or prospective foster parents who receive funding from the department.
You ask whether the prohibition applies to the current members of a community alliance. It is generally recognized that the power to create an office generally includes the power to modify or abolish it even though the office is occupied by a duly elected incumbent.[7] For example, in recognition of this principle, this office in Attorney General Opinion 03-47 stated that the duties of a mayor may be changed pursuant to a validly enacted charter amendment that, if adopted, would become effective during the mayor's current term. In order to apply an amendment modifying a term or qualification for office to existing officeholders such that it results in a curtailment of the term of office of the sitting officeholder, however, the amendment should unambiguously express that intention.
For example, the Florida Supreme Court in Myers v. Hawkins[8] held that a constitutional amendment barring state legislators from practicing law before state agencies other than judicial tribunals was inapplicable to persons who held office on the effective date of the amendment, stating:
 "The office itself is not abrogated or its duties altered, of course, but the privileges of officeholding are no less impaired by curtailing non-legislative employment opportunities than they would be if the office was made full-time and outside employment prohibited altogether. (footnote omitted) The abridgement in either case is tantamount to changing the qualifications of office. There was absolutely no employment limitation when the term of office was sought."[9]
In reaching such a conclusion, the Court relied on its earlier decision in State ex rel. Reynolds v. Roan,[10] in which the Court stated:
 "[A]n intention to apply the shortened term of an office, or the changed qualifications thereof, to an incumbent, resulting in his ouster from the office before the end of his term, must be clearly expressed in the statute or constitutional amendment making the change before it will be given that effect." (e.s.)
Subsequently in Florida Commission on Ethics v. Plante,[11] the Court held that the disclosural obligations imposed upon state officers under the same constitutional amendment as it considered in Myers v. Hawkins,supra, applied to existing officeholders since it required no curtailment of non-legislative employment opportunities, but left the officeholder with the choice to continue or curtail his current financial practices. Furthermore, the Court found that this constitutional provision did not impose "new and onerous requirements" on incumbents who wished to continue in office.
The 2004 amendment to section 20.19(6), Florida Statutes, prohibiting members of a community alliance, other than those members specified in section 20.19(6)(d), from receiving payments for contractual services from the department or a community-based care lead agency would appear to be more in the nature of the situation presented in Myers v. Hawkins,supra, rather that in Florida Commission on Ethics v. Plante, supra. Chapter 04-356, Laws of Florida, is silent regarding the application of its amendment of section 20.19(6) to existing officeholders and a review of the legislative history surrounding the enactment of this legislation fails to reveal any evidence of legislative intent on this issue. The legislation, however, curtails an alliance member's non-alliance employment opportunities and accordingly appears to impose a "new and onerous requirement" on existing officeholders who wish to complete their term of office.
Accordingly, while I am of the opinion that the Legislature may adopt an amendment modifying the term or qualifications for a statutory office that would apply to existing officeholders, such an amendment should unambiguously express that intention. Since the recent amendment to section 20.19(6), Florida Statutes, does not express such an intent, it is my opinion that the amendment does not apply to the existing members of community alliances during their current term of office.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See s. 1, Ch. 04-356, Laws of Fla. Chapter 04-356, Laws of Florida, became effective July 1, 2004. See s. 5, Ch. 04-356, Laws of Fla.
[2] Section 20.19(6)(b), Fla. Stat.
[3] Section 20.19(6)(h) and (i), Fla. Stat.
[4] See, e.g., Ops. Att'y Gen. Fla. 00-72 (2000) and 03-20 (2003).
[5] See, e.g., Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952).
[6] House of Representatives Staff Analysis on HB 723 w/CS, April 23, 2004 ("anyone who receives funding from either the [Department of Children and Families] or a community-based lead agency from serving on a community alliance").
[7] See, e.g., State ex rel. Landis v. Ward, 117 Fla. 585 (Fla. 1934) (when an office is created by an act of the Legislature, that body has the authority to name the terms of eligibility and modify them at will);State ex rel. Watson v. Crooks, 15 So.2d 675 (Fla. 1943) ("It is academic that municipal and other corporations over which the Legislature has plenary authority may be abolished, modified, and changed within the discretion of the Legislature. In this power is included the power to abolish an office or change the incumbent thereof, there being no constitutional limitation on the Legislature to deal with such corporations."); City of Jacksonville v. Smoot, 92 So. 617 (Fla. 1922).
[8] 362 So.2d 926 (Fla. 1978).
[9] Id. at 935.
[10] 213 So.2d 425, 428 (Fla. 1968). Cf. State ex rel. JudicialQualifications Commission v. Rose, 286 So.2d 562 (Fla. 1973), in which the Court refused to apply to an incumbent judge a constitutional amendment creating a mandatory retirement age which he had passed at the time the amendment became effective.
[11] 369 So.2d 332 (Fla. 1979). And see Holley v. Adams, 238 So.2d 401
(Fla. 1970), in which the Court did apply a newly-enacted resign-to-run statute to incumbent officeholders, concluding that the statute did not affect the qualifications of office or shorten by its operation the term of office. By this approach the need to consider an expression of intent in the statute became unnecessary, since the impermissible feature of statutory or constitutional change an effective "ouster" was not present in the enactment.