[No. 21941. Department One. July 23, 1929.]

THE STATE OF WASHINGTON, *on the Relation of E. R. Ennis, Plaintiff*, v. THE SUPERIOR COURT FOR SPOKANE COUNTY, *Respondent*.[1]

[1] Reported in 279 Pac. 601.

*Kimball & Blake,* for appellant.

*J. M. Geraghty* and *Alex M. Winston,* for respondent.

BEALS, J.—Relator was appointed a member of the civil service commission of the city of Spokane, March 24, 1927, for the term of six years. The city council of that city, April 19, 1929, passed a resolution requiring relator to show cause why he should not be removed from office. Believing that the city council was acting without authority in proposing to consider and determine the question of his removal from the office of civil service commissioner, relator applied to the superior court for a writ of prohibition requiring the city council to desist from proceeding further with the matter. An alternative writ was issued by the superior court, which, upon the hearing to make the same permanent, was quashed, the court then entering an order dismissing the proceeding. Relator thereupon, for the purpose of obtaining a review of the adverse order of the superior court, applied to this court for a writ of *certiorari,* which was issued, together with an order of *supersedeas.* Responding to the writ of *certiorari,* defendant has made return, presenting a transcript of the record as made in the court below, the entire matter being now before us for review.

Respondent raises no question as to the correctness of the procedure which has been followed to place the matter before this court for determination.

Relator contends that the order of the superior court dismissing his application for a writ of prohibition was erroneously entered, for the reason that, as he construes the charter of the city of Spokane, the city

council of that city has no power to remove him from the office of civil service commissioner.

The present charter of the city of Spokane was adopted by the people of that city December 28, 1910, pursuant to Rem. Comp. Stat., § 8947 *et seq.* Section 52 of this charter, creating the civil service commission, pursuant to which section relator was appointed, reads as follows:

"There is hereby established a civil service commission, which shall consist of three members, who shall be appointed by the council, and shall serve without compensation, and whose term of office shall be for six years, except as herein next provided. The council first elected under this charter, as soon as practicable after its election, shall appoint one member of said commission to serve for two years, one member to serve for four years, and one member to serve for six years. Any vacancies in the commission shall be filled by the council for the unexpired term."

The following sections of the charter refer to the removal of officers of the city, and we understand that it is conceded that, if the city council has authority to remove relator from his office, such authority is vested in it by virtue of the following charter provisions:

"Section 3. By and in the corporate name, the city shall have perpetual succession; shall have and exercise all powers, functions, rights and privileges now or hereafter given or granted to, and shall be subject to all the duties, obligations, liabilities and limitations now or hereafter imposed upon, municipal corporations of the first class, by the constitution and laws of the state of Washington; and shall have and exercise all other powers, functions, rights and privileges usually exercised by, or which are incidental to, or inhere in, municipal corporations of like character and degree."

"Section 4. All power of the city, unless otherwise provided in this charter, shall be exercised by, through and under the direction of five commissioners, who

shall constitute the council and one of whom shall be the mayor. The commissioners and council shall be subject to the control and direction of the people at all times, by the initiative, referendum and recall, provided for in this charter.''

''Section 24. The council, after each general election, shall appoint a clerk, corporation council, city engineer, labor agent and purchasing agent. The council may remove any of said appointees at any time.

''The council shall have power to create and discontinue all other officers and employments from time to time as occasion may require, but the appointment and removal of persons filling such offices and employments shall be as hereinafter provided.''

''Section 25. Each commissioner shall have power to appoint and remove the administrative heads of all subdivisions in his department; *Provided, however,* that the head of any subdivision shall not be deprived, by any such removal, of the standing under the civil service provisions of the charter, which he may have had before his appointment as head of a subdivision.''

''Section 36. No officer or employee of the city shall solicit or receive any pay, commission, money or thing of value, or derive any benefit, profit or advantage, directly or indirectly, from or by reason of any improvement, alteration or repair required by authority of the city, or any contract to which the city shall be a party, except his lawful compensation or salary as such officer or employee. No officer or employee of the city, except as otherwise provided in this charter, shall solicit, accept or receive, directly or indirectly, from any public service corporation, or the owner of any public utility franchise in this city, any pass, frank, free ticket, free service or any other favor upon terms more favorable than those granted the public generally. A violation of any of the provisions of this section shall disqualify the offender to continue in office or employment and he shall be removed therefrom.''

''Section 41. A park board is hereby created which shall consist of ten (10) electors of the city of Spokane, who shall be appointed by the council; and one member

of the council to be designated by the council. The ten appointed members of the park board existing at the time of the adoption of this charter shall continue to serve respectively until the first Tuesday of February next preceding the expiration of their terms, as at present fixed, and until their successors are appointed. The council shall have power to remove any member for cause and to fill vacancies in the board.''

Relator contends that, because § 52, *supra,* does not provide for the removal of civil service commissioners by the city council, because § 36, *supra,* does not provide for the manner of removal of city officers charged with misfeasance or malfeasance in office, and because the city charter specifically provides the method to be followed in removing all other officers of the city, civil service commissioners may not be removed from office by the city council, but may be so removed by the superior court in a proceeding by way of *quo warranto,* and that, as to the removal from office of civil service commissioners, the procedure by *quo warranto* is exclusive.

On the other hand, it is urged on behalf of respondent that the powers of the commissioners of the city of Spokane who form the city council of that city are, as to municipal affairs, unlimited, save as circumscribed by the constitution of the state or by express legislative enactment, and that the city council is vested with jurisdiction to remove relator from office.

Rem. Comp. Stat., §§ 8981 and 8982 (referring to the adoption of charters by cities of the first class, the city of Spokane falling within that classification), read as follows:

''Section 8981. Any city adopting a charter under the provisions of this act shall have all the powers which are now or may hereafter be conferred upon incorporated towns and cities by the laws of this state, and all such powers as are usually exercised by mu-

nicipal corporations of like character and degree, whether the same shall be specifically enumerated in this act or not.''

''Section 8982. The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this act, but the same shall be liberally construed for the purpose of carrying out the objects for which this act is intended.''

Relator urges that, because the city charter provides the method of removal of all other officers of the city and does not specifically set forth the method of removal of civil service commissioners, it must have been intended by the framers of the charter that civil service commissioners could be removed only by some authority without the city government. In support of this proposition, it is argued that the civil service commission is an independent body, created by the charter, whose duty it often is to pass as a reviewing authority on the action of members of the city council relative to city employees in their respective departments, and that, for this reason, it was the intention of the framers of the charter that the civil service commission could not be removed by the city council, but that their tenure of office should not, after appointment, be in any manner dependent upon that body.

Relator cites, in support of his contention that the trial court erred in refusing to grant the writ of prohibition which he sought, several decisions of this court which will now be considered.

In the case of *State ex rel. Forstell v. Otis,* 131 Wash. 455, 230 Pac. 414, it was held that *quo warranto,* and not mandamus, was the proper remedy, where the title to the office of city councilman was in question, because of the fact that a councilman from one ward had, after his election, changed his residence to another ward. After making such change of residence, the

mayor of the city refused to recognize the councilman as longer holding his office, although his term had not yet expired, whereupon the councilman applied to the court for a writ of mandamus requiring the mayor of the city to permit him to continue to act as a member of the city council. A motion to dismiss the proceeding was interposed by the respondents therein, based upon the ground that the pleading showed a contest "with reference to the right and title to an office," which motion was granted by the superior court upon the ground that mandamus was not the proper remedy.

In considering the question, this court says:

"This court has many times held that, wherever the title to an office, or the right to it, is involved, and where it is necessary to determine from the facts outside the pleadings as to who is entitled to the office, mandamus is not the proper remedy, but that the person claiming the office must resort to *quo warranto*."

On appeal, it was held that relator had no remedy by way of mandamus, and the judgment of the trial court was affirmed.

In the course of the opinion in the case last cited, attention is called to the fact that:

"The sole question in this case is whether the petitioner has mistaken his remedy; whether the relief which he seeks is to be obtained through mandamus or *quo warranto*."

Rem. Comp. Stat., § 9127, subd. (k), which contains the following provision, was cited:

"The removal of a councilman from the ward for which he was elected shall create a vacancy in such office."

Relator contended that his removal from the ward from which he was elected did not of itself create a vacancy, but that to create a vacancy some determina-

tion, judicial or otherwise, of the fact of his removal was necessary.

In the case at bar, an entirely different question is presented and we do not find that the case last referred to assists us in its determination.

Relator also cites the case of *Price v. Seattle,* 39 Wash. 376, 81 Pac. 847, in which this court held that the removal of a driver, employed by the street department of the city of Seattle, holding a classified civil service rating, by the superintendent of streets, was, under the circumstances of that case, not subject to review by the courts on an application by the removed employee for a writ of mandamus. The case is not in point upon the question here presented, as the employee of the city, who was discharged by his superior officer, was not holding for a definite term, and was removed in accordance with the provisions of the city charter directly providing for such removal.

In the case of *State ex rel. Evans v. Superior Court,* 92 Wash. 375, 159 Pac. 84, it was held that the mayor of the city of Tacoma had no authority to revoke the appointment of one of the justices of the peace for Tacoma precinct as police justice of that city, that the term of the appointment of the justice of the peace as police justice was coextensive with the term for which he was elected as justice and that the justice of the peace held his office as police justice by virtue of the constitution and general laws, and was not the "official creature" of the mayor of the city, although designated by the mayor as police justice. The court being of the opinion that a justice of the peace, having been appointed police justice of the city, is a constitutional officer holding for a specified term, it followed that the appointment of such an officer as police justice, once regularly made, could not be summarily revoked

by the mayor, in the exercise of the arbitrary will of the executive.

It cannot be contended that relator, as a civil service commissioner of the city of Spokane, is a constitutional officer in the same sense that this term applies to a regularly elected justice of the peace who has been by the mayor of his city designated as police justice.

Relator also cites the case of *State ex rel. Winsor v. Mayor and Council of Ballard,* 10 Wash. 4, 38 Pac. 761, as supporting his contention. In that case relator, a duly elected member of the common council of the city of Ballard, applied to the superior court for a writ of mandamus requiring the mayor and council to recognize him as a member of the common council of that city. In his petition for the writ, relator alleged his election as a member of the common council, that a written statement was filed with the city charging that relator had been guilty of violation of law by, while a member of the city council, furnishing lumber to the city and presenting a bill therefor, and that thereupon the council passed a resolution declaring relator's office vacant. To this petition, an answer was filed admitting relator's election, and alleging that one, Keane, a member of the council, had charged relator with a violation of law, as alleged by relator. The answer also alleged the giving of notice of the charge to relator, the fixing of a day for hearing the same, relator's appearance and refusal to answer, and that thereupon a finding of guilty as charged was made by the council, which then and there passed a resolution removing relator from his office and declaring the same vacant. To these allegations, a demurrer was interposed which the trial court overruled. It would seem that relator must have elected to stand upon his demurrer, as thereupon the superior court dismissed relator's petition and quashed the alternative writ theretofore issued.

On appeal, this court reversed the order of the trial court overruling relator's demurrer, and held that the power to remove a councilman was not granted to the city of Ballard by law in express words, that such power was not necessarily or fairly implied or incident to the powers expressly granted, and was not essential to the declared objects and purposes of the corporation. The court quotes with approval from Dillon on Municipal Corporations, § 89, where the doctrine is laid down that any reasonable doubt as to the existence of power is resolved by the courts against the corporation, the application of this doctrine being, of course, limited to such a municipal corporation as was the city of Ballard at the time the facts giving rise to the litigation then before the court arose. The court also held that the charge upon which relator was removed from office was insufficient in form, in that it failed to allege a willful violation of law. With this latter phase of the opinion, we are not concerned.

The city of Ballard was not a city of the first class, and therefore could not claim the benefit of the very liberal statutory provisions enacted by our legislature defining the powers of such cities.

Rem. Comp. Stat., § 8966, specifically enumerates many powers which are thereby vested in cities of the first class. Section 8981, *supra,* confers general powers upon such cities, and § 8982 lays down a rule of statutory construction for the guidance of courts in passing upon questions involving the exercise by cities of the first class of their powers. Rem. Comp. Stat., § 8963, referring to amendments of city charters, in first class cities, by direct vote of the people, provides the method for submission to the voters of charter amendments "providing for any matter within the realm of local affairs, or municipal business."

In the case of *Walker v. Spokane,* 62 Wash. 312, 113 Pac. 775, Ann. Cas. 1912C 994, this court said:

"It may be conceded from the outset that, while cities of the first class have the constitutional right to frame their own charters, the charters so framed are subject to, and controlled by, general laws. Const., art. 11, § 10. And this is all the constitutional limitation that there is."

The court held that the adoption by the qualified voters of a city of the first class of proposed amendments to their charter, establishing what is known as a commission form of government, was, under Rem. Comp. Stat., § 8963, not "beyond the realms of local affairs or municipal business."

It is evident from the constitution of this state and legislative enactments that, in Washington, cities of the first class are vested with very extensive powers, and that, under Rem. Comp. Stat., § 8982, *supra,* the statutes of this state concerning the same must be liberally construed by the courts for the purpose of carrying out the manifest intent of the legislature to establish cities of the first class as self-governing bodies, only "subject to and controlled by general laws." *(Walker v. Spokane, supra.)*

Manifestly, therefore, a different rule of construction must be applied in determining the powers of a city of the first class from that used when the powers of a city of another classification are in question, and the opinion of this court in the case under discussion is not determinative of the question now before us for consideration. The rule, quoted by this court, laid down in Dillon on Municipal Corporations, § 89, to the effect that "Any fair or reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied," should not be followed in determining a question involving the

powers of a city of the first class, under its charter, as subject to and controlled by general laws.

The authorities cited by relator do not support his contention that the city council, in proceeding to consider the question of his removal from office, is acting without and beyond its jurisdiction.

McQuillin on Municipal Corporations, vol. 2, p. 1217, is cited on behalf of respondent, a portion of the text reading as follows:

"Frequently the power of removal or suspension of municipal officers is given to the council or governing legislative body, and in the absence of law vesting such power elsewhere, it rests with this agency. Under a charter providing that 'all the corporate powers of the corporation shall be exercised by the council,' the power of removal of officers for misconduct which under the common law is vested in the corporation at large is by such provision conferred upon the council."

In Dillon on Municipal Corporations (5th ed.), vol. 2, pages 781-784, we find the following:

"Sec. 462. The power to *amove a corporate officer* from his office, for reasonable and just cause, is one of the common-law incidents of all corporations. This doctrine, though declared before, has been considered as settled ever since Lord Mansfield's judgment in the well-known case of *King v. Richardson*, 1 Burr. (K. B.) 517. It is there denied that there can be no power of amotion unless given by charter or prescription; and the contrary doctrine is asserted,—that from the reason of the thing, from the nature of corporations, and for the sake of order and government, the power is incidental."

"Sec. 464. . . . Has the council, as the representative of the corporation, the incidental powers of a corporation, such as the power to amove, or the power to ordain by-laws? Or is the council in the nature of a select body, possessing no right to exercise any of the ordinary incidental powers of the corporation, unless expressly authorized by charter or legislative grant?

The question not being judicially settled as to our municipal corporations, the opinion is ventured that, in the absence of an express grant or statute conferring or limiting the power, the common council of one of our municipal corporations as ordinarily constituted, does possess, in the absence of any express or implied restriction in the charter or other statute, the incidental power, not only to make by-laws, but, *for cause, to expel its members, and, for cause, to remove or provide by ordinance for the removal for just cause of corporate officers,* whether elected by it or by the people."

"Sec. 465. Whatever necessity or reason exists for the right of amotion at common law, with respect to the corporation at large, would, in the absence of any controlling legislative provision, seem to exist here not only as to the doctrine itself, but also *with respect to that authorized body* by which alone the corporation acts, and which exercises all the corporate powers and functions. All of the inhabitants cannot meet and act in their primary capacity, except in organizations like the *towns* in the New England states; and if an implied or incidental right of amotion exists at all, it must be exercised by the council or governing body of the corporation. If it does not exist in the council, it cannot be *delegated* to it by an ordinance or by any act of the corporation, though if the right does exist, its exercise may, of course, be regulated by ordinance or by-law. And the right may doubtless, we think, be inferred from the express power to make needful or reasonable by-laws, if there is nothing in the charter or legislation to rebut the inference."

This court, in the case of *Bringgold v. Spokane,* 27 Wash. 202, 67 Pac. 612, held that the suspension of a police officer of the city by the board of police was without authority, and that the right to suspend was not necessarily included within the right to remove. In the course of the opinion, it is said:

"Our conclusion, therefore, is, in the light of what seems to be the weight of authority as discussed above, that either the power of removal or suspension may be

exercised within reasonable bounds by the mayor and council, as the governing body of the municipality, so that it becomes originally the act of the municipality itself, but that neither power can be exercised by an individual or inferior board unless it is expressly conferred. The power to suspend was not expressly delegated to the board of police of the city of Spokane, either by charter or by any ordinance or resolution, which was the act of the city.''

Under the city charter now before us, the city council is the governing body of the municipality, and exercises, under the charter and general laws, all lawful powers of the city not specifically vested elsewhere. ▪ Under the common law, municipal corporations enjoy very broad powers, including the power of removing corporate officers. *King v. Richardson*, 1 Burr. (K. B.) 517; *Richards v. Town of Clarksburg*, 30 W. Va. 491, 4 S. E. 774; *Mayor, etc., of Savannah v. Grayson*, 104 Ga. 105, 30 S. E. 693; *State ex rel. McMahon v. New Orleans*, 107 La. 632, 32 South. 22; *Hawkins v. Common Council of City of Grand Rapids*, 192 Mich. 276, 158 N. W. 953. These citations are important in considering the question now before us, in view of Rem. Comp. Stat., § 8982, *supra*, directing a liberal construction of the legislative enactment providing for the adoption of charters by cities of the first class.

It clearly appearing from the authorities cited that, at common law, municipal corporations were vested with authority, acting through their legislative and governing bodies, to remove municipal officers and employees, and bearing in mind Rem. Comp. Stat., §§ 8981, 8982, *supra*, we now consider the particular sections of the charter of the city of Spokane above quoted, upon the construction of which depends the determination of the questions at issue in this proceeding.

Section 36 of the charter of the city of Spokane, *supra,* after forbidding certain acts, on the part of city officers or employees, concludes,

"A violation of any of the provisions of this section shall disqualify the offender to continue in office or employment and he shall be removed therefrom."

The charter does not provide any method for the removal of any officer or employee of the city who shall violate the provisions of this section, nor does it anywhere state by what authority the offender shall be removed from his office or employment. Sec. 52 of the charter, *supra,* creating the civil service commission, makes no provision for the removal of the civil service commissioners for malfeasance. Neither does the charter provide that such commissioners may be removed only by some authority outside of and apart from the city government. It leaves the method to be followed in seeking such removal to be determined by general rules of law applied to the particular situation in question.

It is our opinion that, upon the state of facts now before us, it must be determined that the city of Spokane, acting through its governing body, its city council, has authority to hear and determine charges against a member of its civil service commission and that the city council may, in a proper case and after due proceedings had, remove such civil service commissioner from office.

 Relator's argument that, because the civil service commissioners may be called upon to review the acts of members of the city council, it was the intention of the framers of the charter that the city council should have no authority to remove the commissioners, may as a practical proposition have merit, but, in the absence of some affirmative statement in the instrument itself to that effect, we cannot conclude

that the charter must be so construed. A basic plan of government, whether for a city, state, or nation, as embodied in a charter or constitution, is naturally framed with a view to call in outside agencies to assist in its governmental administration to the least possible extent. The institution of a proceeding by way of the statutory writ of *quo warranto* depends necessarily upon the action of some officer other than an official of the city, and unless it clearly appears from a charter of a city of the first class that it was the intent of the framers thereof to require that such a portion of the necessary and important city business be placed in the hands of some agency other than one pertaining to and a part of the city government, such a city charter will be construed rather to retain the power in the city government, than vest the same in some outside and independent official.

The fact that the charter provides no particular method for removal of an officer or employee violating its provisions is immaterial, as it is a simple matter to improvise a procedure which will give adequate notice to the accused and provide for a full and fair investigation and determination of the questions at issue. We are not now concerned either with the details of such procedure or with any question as to what facts may or may not constitute ground for removal of an officer or employee who may be accused of violation of the charter.

We conclude that, in proceeding to determine the question of relator's right to hold his office, the city of Spokane is not relegated to the remedy of an application to the court by way of *quo warranto,* but that the city council has jurisdiction in the first instance to proceed to hear and determine the question of whether or not relator shall continue to hold his office or be removed therefrom.

The judgment appealed from is affirmed, and the order of *supersedeas* entered herein is dissolved.

FULLERTON, TOLMAN, HOLCOMB, and FRENCH, JJ., concur.