**LONGO v. CITY OF HALLANDALE, et al.**

No. 75-990.

Circuit Court, Broward County.

May 6, 1975.

J. Victor Africano of Crouch, Ward & Africano, Hallandale, and Paul L. Ross, New York City, for the plaintiff.

Hugh S. Glickstein, Hollywood, Special Counsel of the City of Hallandale.

Jack E. Milberry, Hollywood, for defendants Spiegel, Blystone & Forman.

STEPHEN R. BOOHER, Circuit Judge.

*Final judgment:* This cause came on for early final hearing by stipulation of counsel, all parties recognizing that the matter was of great public importance and that its prompt resolution was essential for the welfare of the city of Hallandale and its citizens. The case is at issue on the plaintiff's amended complaint, answers containing affirmative defenses filed both by the city and by three of the five commissioners, and the plaintiff's reply, which, by leave of court, also incorporated additional grounds for relief. At final hearing the court also considered the city's motion to strike the plaintiff's reply to affirmative defenses and a motion to dismiss incorporated into the city's amended answer.

The plaintiff is the duly appointed and acting chief of police of the city of Hallandale; the five individual defendants are the duly elected and acting city commissioners. This suit involves the right of the city commission to remove the plaintiff from office and the procedure it must follow in doing so.

The plaintiff was appointed chief of police of the city of Hallandale on August 28, 1973. Pursuant to the requirements of §15 of the charter of the city, his appointment was recommended by the then city manager. The final approval was given and appointment was made by majority vote of the city commission. The appointment was by resolution rather than by ordinance, as provided by §10(6) of the charter.

This controversy came to a head after some months of confrontation. During this time, the plaintiff claims that he was improperly interrogated by the city manager and by members of the city commission; that the city manager unlawfully attempted to remove him; and that he voluntarily resigned and then voluntarily withdrew his resignation. The specific incident that precipitated this action occurred on January 17, 1975, when Vice Mayor Spiegel and Commissioners Blystone and Forman signed the necessary agenda to call a special meeting for Monday, January 20, 1975, at 1:00 P.M. The stated purpose of the meeting was —

"1 — Consideration of the termination of services of Police Chief J. R. Longo of the City of Hallandale, effective 1:00 P.M., January 20, 1975."

The plaintiff filed this action for injunctive and other relief on the morning of January 20, 1975, and at 11:30 A.M. the court held an emergency hearing with notice, which was attended by the plaintiff, each of the defendant city commissioners, and their counsel. The hearing was also attended by the city attorney and city manager. Initially the city was not a party defendant, but all parties and the court recognized that the city was properly a defendant and probably an indispensable party. With the consent of the mayor and the other four commissioners, the city of Hallandale was submitted forthwith to the jurisdiction of the court as a party, and leave was granted to the plaintiff *ore tenus* to amend his complaint to formally add the city as a defendant. The length of the emergency hearing, which extended into the time set for the special meeting, resulted in the commission's adjourning the special meeting to a later date, and thereafter by stipulation of counsel it was agreed that no further action would be taken by the commission to effect the plaintiff's removal as chief until this cause could be determined.

By his amended complaint, the plaintiff raises three issues. First, he urges that the notice given him of the special meeting was inadequate, being less than five days and in reality only Friday afternoon and Monday morning if the weekend were excluded. This point has been rendered moot by the continuation of the original special meeting, but it is implicit in his argument that any hearing following the rendition of this judgment should be held only after adequate notice. Secondly, he claims that both the procedures employed in calling the special meeting, and the prior interrogations which preceded this action, violated rights guaranteed to him by the so-called Law Enforcement Officers' Bill of Rights, Chapter 112, Part VI, Florida Statutes, 1974 Supplement, §112.531, et seq. (Ch. 74-274, Laws of Florida, 1974, effective October 1, 1974). Thirdly, he claims that the proposed termination violated his rights

under the Florida Declaration of Rights and the United States Constitution. By his reply, the plaintiff with leave raises the additional issues that the defendants have no right to remove him as chief because the charter provision authorizing his appointment does not grant to the city commission any power to remove him, and, further, that he is entitled to civil service protection under the provisions of Chapter 174, Florida Statutes, 1971, and the Civil Service Act of the City of Hallandale, Ch. 30793, Special Laws of Florida, 1955.

By their answer, the three defendant commissioners assert that the court lacks jurisdiction because the plaintiff has failed to exhaust his administrative remedies and because the court has no authority to enjoin the legislative body of the city of Hallandale. They also filed affirmative defenses to a counterclaim for declaratory judgment, which was originally filed by the then city attorney but, after his resignation, was later withdrawn by the special counsel who succeeded him.

The city in its amended answer asserts that the chief of police holds office at the pleasure of the city commission, and that he may be removed or discharged, without notice or cause, at any time. The city contends that the Law Enforcement Officers' Bill of Rights does not apply to the plaintiff because the act was expressly not intended to apply to chiefs of police, and also attacks the constitutionality of the act on a variety of fronts.

The many issues presented can be reduced to three basic questions, the answers to which resolve the main problems presented. The remaining issues can be disposed of summarily.

# I

The first question presented is whether the Law Enforcement Officers' Bill of Rights applies to chiefs of police. Based on the legislative history of the act, the court concludes that it does *not* and that the plaintiff, therefore, is not entitled to the benefits and protections therein provided.

Briefly, the Law Enforcement Officers' Bill of Rights defines "law enforcement officer," "employing agency," and "board," the latter meaning the police standards board created by Chapter 23, Part IV, of the Florida Statutes rather than the complaint review board provided for in §2(2) of the act. It provides that when a law enforcement officer is under investigation or is being interrogated "by members of his agency" the interrogation shall be conducted at a reasonable hour and at the office of the command of the investigating officer. It provides that the officer under investigation shall be informed of the name, rank and command

of the officer in charge and all others present, and the nature of the investigation and the name of all complainants. It provides for reasonable periods of investigation and reasonable rest periods. It protects the officer from threats and offensive language. It provides for the right to counsel, recording of the formal interrogation, and advice of all his rights prior to interrogation if the officer is placed under arrest. By its other provisions, the act creates a complaint review board, allows suits for damages suffered by an officer, prevents retaliation for exercising the rights granted, requires the establishment of a system for receipt and determination of complaints, and authorizes the attorney general at the request of the police standards board to apply to the courts for injunctive relief for non-compliance with the act.

It can be seen from the foregoing summary that the purpose of the act is to protect a police officer from arbitrary and unreasonable interrogation and investigation by superior officers whom he is otherwise in no position to resist. It is also clear from the legislative debates that the act was intended to apply only to *intra*departmental interrogation and investigation, and had as its purpose the protection of subordinate officers from "third degree" tactics by superior officers, especially in jurisdictions where the subordinate officer was not protected by civil service. See: Proceedings of the Senate Committee on Governmental Operations, March 20, 1974 (Defendant's Exhibit 8, pp. 4, 26, 28, 33-35); Proceedings of the House of Representatives, May 27, 1974 (Defendant's Exhibit 9, pp. 5-6).

As originally drafted, the act was intended to apply to all law enforcement officers, all interrogations and all investigations. On further consideration, however, it became apparent that the broad scope of the language of the act could operate to impede criminal investigation by the state attorney, grand jury, sheriff's department or the Florida Bureau of Law Enforcement, and that it created potentially troublesome conflicts with the right of the state attorney and grand jury to grant immunity in the furtherance of criminal investigations. It was decided, therefore, to limit the applicability of the act to internal security situations. See: Proceedings of the Senate Committee on Governmental Operations, March 20, 1974 (Defendant's Exhibit 8, pp. 32-35). This was accomplished by deleting the reference to interrogation by other investigating agencies and the reference to criminal charges, it being recognized, and properly, that any officer in that situation would have the benefit of established constitutional guarantees available to all criminal defendants generally.

As originally drafted, §2(1) of the act, §112.531(1), Florida Statutes, read (with the deleted language in italics) as follows—

> Whenever a law enforcement officer is under investigation and is subject to interrogation by members of his *or any other investigative* agency, for any reason which could lead to disciplinary action, demotion, [or] dismissal, *or criminal charges,* such interrogation shall be conducted under the following conditions: . . .

By the amendments, the portions in italics were deleted and the bracketed word added for grammatical purposes. See: Amendment No. 3 (Senator Smathers) and Amendment No. 6 (Senator Sayler), Senate Bill 84, and "Work Copy," Committee Substitute for Senate Bill 84 (Defendant's Exhibit 7).

Two things become apparent upon studying the original and revised language. The first, and most important, is that the words "his agency" in the phrase "interrogation by members of his agency" in the act as adopted mean his *police* agency rather than his *employing* agency, as would at first appear. This is so because a police department is an investigative agency, and a municipality and its governing body are not. In our context, therefore, the phrase "his agency" means the Hallandale Police Department rather than the Hallandale City Commission.

The second thing is that the deletion of other investigative agencies limited the act to interrogations *within* the police department. It follows from this that the act cannot apply to the chief of police because he is the administrative head of the agency and there is no one *within* the department superior to him either to conduct the interrogation or to command the investigation.

The effect of these amendments was understood by the drafters of the act. The "Senate Summary" attached to the revised bill as presented to the Senate described the committee substitute as making "the protection in Sec. 2(1) apply only in interrogations by *'internal'* superior officers" (Defendant's Exhibit 7, p. 1, *emphasis added*). Patently, interrogations by the city commission or the city manager would be interrogations by an external rather than an internal superior officer.

But even beyond that, the specific question of the effect of these amendments upon interrogations by external superior officers was discussed. See: Proceedings of the Senate Committee on Governmental Operations, March 20, 1974 (Defendant's Exhibit 8, p. 33). It was recognized that the deletions from the original draft removed interrogation by city managers and city commissions from the protection of the act and opened the door to such interrogation without any limitation.

Based on the foregoing, this court concludes that the Law Enforcement Officers' Bill of Rights, Chapter 112, Part VI, Florida Statutes, 1974, does not by its terms apply to chiefs of police. The

plaintiff, as a result, is not protected from removal by virtue of its provisions, nor need the city commission comply with its procedural aspects in terminating his services.

Because of the conclusion reached, it is neither necessary nor proper for the court to pass upon the constitutional challenges mounted by the city. This is so because courts will not pass on the constitutionality of statutes if the case may be properly decided, as here, on other grounds. State, ex rel. Bankers Life and Casualty Company v. Village of North Palm Beach, 138 So.2d 378, 379 (2nd D.C.A. Fla. 1962); 6 Fla. Jur., *Constitutional Law*, §49. Compare: Green v. State, Fla. 1964, 166 So.2d 585.

Since the legislature is now in session and will consider within the next ten days amendments to the act, it may be well to note that all counsel and the court had problems with the mechanics of notification of proposed personnel action under §2(4) and the necessary scope and detail of the "reason or reasons" called for thereunder. In addition, we are uncertain as to the functions of the complaint review board provided in §2(2), when and how it is to be implemented in the event of a dispute, what it is supposed to do, and what effect or weight is to be given and by whom to its determinations, assuming it is supposed to make a determination. In these respects the act teeters on the brink of being void for vagueness, and before it is pushed over the edge it may be desirable to give it more clarity by amendment.

## II

The second question presented is whether the plaintiff serves at the pleasure of the city commission and may be removed without notice or cause, or whether he may be removed only for cause and after notice and hearing. The court concludes that he does *not* serve merely at the whim and sufferance of the commission and that he *is* entitled, therefore, to adequate notice, a full and fair hearing, and a decision based upon competent and substantial evidence.

The applicable law which controls the answer to this second question was established by the early case of Bryan v. Landis, ex rel. Reeve, 106 Fla. 19, 142 So. 650 (1932). In that case, the Supreme Court of Florida held that, under the common law, a municipal officer could be removed only for cause and after notice and an opportunity to be heard. In the absence of statutory or constitutional provisions to the contrary, the common law rule prevails in this state. Statutes designed to alter the common law rule must speak in clear and unequivocal terms, and the rule will not be changed by doubtful implications.

The Supreme Court further said that one appointed to hold office during the pleasure of the appointing authority may be

removed at any time without notice or hearing, provided that the power of appointment is coupled with the power of removal, or that the power of removal is otherwise granted in general terms. It has been held, the court said, that the power of removal is incident to the power of appointment, and that removal may be made at the discretion of the appointing power, but this applies only where the appointee holds at the pleasure of the power making the appointment. The court concluded that, in the absence of constitutional limitation — see Question III, *infra* — the legislature has the power to prescribe the conditions under which municipal officers may be appointed and removed, and that the manner of removal depends upon the specific language of the charter in question.

The provisions of the charter of the city of Hallandale which cover the appointment and removal of municipal officers and employees are contained in §15 of the charter. That section provides, *inter alia* —

> . . . The city manager shall make recommendations to the commission as to persons to be appointed to the office of chief of police and fire chief and city clerk and to the various boards set up by ordinance... but the final approval and appointment shall be by the commission. The city manager may appoint without the commission's approval the following officers and employees . . .

> The police officers of the police department . . . shall be appointed by the chief of police . . . but with the approval of the city manager, and in case of conflict arising as to such appointments, the commission shall resolve such conflict. If conflicts arise as to any other matters between the city manager and the chief of police . . . or any other of the above-designated officers, employees and heads of departments, such conflicts shall be also resolved by the commission.

> The city manager shall also have the power to suspend or discharge any officers, employees or head of a department whom he can appoint without the commission's approval. . . .

The plaintiff contends that this language grants the city commission the power to approve and appoint the chief of police, but that it grants no express power to remove him. He argues that, in the absence of such specific language, the common law rule controls, and he may be removed only for cause, after notice and hearing.

The city contends that the power of removal from office is incident to the power of appointment. Baynard v. Windom, Fla. 1952, 63 So.2d 773, 775; Hall v. Strickland, Fla. 1964, 170 So.2d 827, 831; Gontz v. Cooper City, 228 So.2d 913, 914 (4th D.C.A. Fla. 1969). The city specifically relies upon Bauer v. City of Gulfport, 195 So.2d 571 (2nd D.C.A. Fla. 1967), which enunciates the

principle that a municipal employee generally holds at the pleasure of the appointing authority and that the power of removal may be exercised at any time.

The city appears to recognize that the applicable charter provision is silent as to the power of removal. To supply this deficiency, the city points to §10(7) of the city charter, which provides —

> All powers of the City of Hallandale, except such as are vested in the jurisdiction of the municipal court, and except as otherwise provided by this Charter or by the Constitution of the State of Florida, are hereby vested in the city commission; . . .

The argument is made that if all other power is reserved to the city commission, this must include the power of removal.

The problem with this argument is that it fails to take into account two of the principles set forth in Bryan v. Landis, supra. The first is that provisions designed to change the common law rule must speak in clear and unequivocal terms; the rule cannot be changed by implication. Section 10(7) hardly meets these standards. The second is that, to authorize removal without notice or hearing, the power to appoint must be coupled with the power to remove, or the power to remove must be granted in general terms. Neither is the case under the specific language of the charter of Hallandale.

The application of this second principle, however, explains the outcome of Bauer v. City of Gulfport, supra. The charter provision there construed reserved all powers to the council and specifically provided that "the council shall have the power to . . . [a]ppoint *and remove* . . ." (Emphasis added.) The power to remove was coupled with the power to appoint. Removal without notice or hearing, therefore, was authorized and upheld.

An examination of the other cases cited by the defendant city also reveals that they do not apply here. In Baynard v. Windom, supra, the charter provision being construed coupled the power of appointment and removal; in that case, the removal was for cause, after notice and hearing. In Hall v. Strickland, supra, the question was the power of the legislature to abolish an office created by it. The court cited with approval City of Jacksonville v. Smoot, 83 Fla. 575, 92 So. 617, 620 (1922), where the court held that even when an officer cannot be lawfully removed except for cause after a full hearing, his office may be summarily abolished when the proper municipal authorities deem it advisable. If anything, these cases support the position advanced by the plaintiff.

The case of Gontz v. Cooper City, 228 So.2d 913 (4th D.C.A. Fla. 1969), and State, ex rel. Ennis v. Superior Court of Spokane County, 153 Wash. 139, 279 P. 601 (1929), on which *Gontz* relies,

deal only with the presence or absence of the power of removal and not with the manner of its exercise. In *Gontz* the court found that the power to remove a part-time police officer was vested by a reservation of power in the commission rather than the chief of police. In *Ennis* the court found the power to remove a member of the civil service commission was vested in the city council rather than in the superior court. In both cases the charter was silent, as here, on the power of removal. In *Ennis* the court cited with approval Dillon on Municipal Corporations (5th ed.), vol. 2, §464, pp. 781-784, as follows —

> . . . in the absence of an express grant or statute conferring or limiting the power, the common council of one of our municipal corporations as ordinarily constituted, does possess, in the absence of any express or implied restriction in the charter or other statute, the incidental power, not only to make by-laws, but, *for cause, to expel its members, and, for cause, to remove or provide by ordinance for the removal for just cause of corporate officers,* whether elected by it or by the people. (Emphasis supplied by the Supreme Court of Washington.)

In rejecting the contentions advanced by the city, we do not mean to indicate that the city commission does not have the inherent power to remove an officer or employee which it has appointed. But we do recognize that a distinction must be drawn between the existence of the power to remove and the manner in which that power is exercised. For this reason, a distinction must be drawn between those cases where only the presence or absence of the right to remove is at issue and those cases that deal with *how* the power of removal is to be exercised, once it is found to exist. The cases cited by the city fall into the former category and they are, consequently, of no real help in deciding the problems in the latter category, with which we are here involved.

The principles of Bryan v. Landis, supra, have been reaffirmed in Burklin v. Willis, 97 So.2d 129 (1st D.C.A. Fla. 1957), and City of Boca Raton v. Cassady, 167 So.2d 886 (2nd D.C.A. Fla. 1964). In Cassady, the city attempted to remove three members of the civil service board pursuant to the terms of an ordinance adopted after their appointment which purported to authorize the city commission to review their performance annually and to reaffirm or refuse to reaffirm their tenure in office, with or without specific cause. The trial court struck down the ordinance as clearly in conflict with the controlling principle that a municipal officer not serving at the pleasure of the appointing authority can be removed only for cause after notice and hearing. Hendrickson v. City of Miami, 10 Fla. Supp. 19, aff'd, Fla. 1957, 91 So.2d 816; Burklin v. Willis, supra; State, ex rel. Gibbs v. Bloodworth, 134 Fla. 369, 184 So. 1 (1938); Bryan v. Landis, supra.

In Burklin v. Willis, supra, the court announced a corollary to the rule of Bryan v. Landis, supra, which is particularly applicable here. The court recognized that where the charter provides that one municipal employee serves at the pleasure of the city commission but is silent as to the tenure of another, this silence indicates that the other does *not* serve at the pleasure of the appointing authority, because if the legislature had so intended it would have so provided. The charter of the city of Hallandale contains just such a provision. Section 18(1) provides that the city manager shall serve at the pleasure of the city commission; the charter is silent as to the tenure of the chief of police. Applying the corollary, we must conclude that the chief of police does *not* serve at the pleasure of the city commission.

Both Bryan v. Landis and Burklin v. Willis recognize the principles that the city says should be applied here, which authorize removal at the discretion of the appointing authority; but they both also recognize that this principle applies only when the appointee holds office at the pleasure of the appointing authority. Such is not the case here.

Based on the foregoing, this court finds — (1) the common law rule — that an officer can be removed only for cause and after notice and an opportunity to be heard — applies to this case; (2) the charter of the city of Hallandale does not change this rule in clear and unequivocal terms; (3) the power of appointment contained in §15 of the charter is not coupled with the power of removal, nor is such power granted in general terms; and (4) the plaintiff does not serve at the pleasure of the city commission, and he cannot be removed, therefore, at the pleasure of the city commission.

This court concludes, therefore, that the plaintiff, prior to any hearing on his termination, is entitled to due and adequate notice of the charges preferred against him, a fair hearing on such charges, and a fair opportunity to defend against such charges; and that after such hearing he may be removed only upon substantial proof of such charges by the greater weight of the evidence. Burklin v. Willis, supra. Cf. Hammond v. Curry, 153 Fla. 245, 14 So.2d 390 (1943); State, ex rel. Hawkins v. McCall, 158 Fla. 655, 29 So. 2d 739, 741 (1947).

### III

The third question presented is whether notice and hearing are also required by the Declaration of Rights of the Constitution of Florida and by the 14th Amendment to the United States Constitution. The court concludes that both constitutions guarantee procedural due process of law and that the precepts of procedural due process mandate notice and hearing under the facts of this case.

Procedural due process relates to the character of the proceeding by which any person is deprived of life, liberty or property. The guaranty requires that any such proceeding be resolved in a manner consistent with essential fairness. It reflects the rule, as old as the law itself, that no one shall be bound until he has had his day in court.

As applied to the case *sub judice,* the test of procedural due process is whether the procedure which the Hallandale City Commission proposes to use in determining whether the plaintiff is to be retained or removed is essentially fair. He can legitimately argue that the substance of the determination of whether he has done his job properly is meaningless if the procedure used in determining it deprives him of his day in court. In other words, if he is to be removed without cause, notice, or hearing, the true merits of the controversy are lost because they never reach open debate in the light of day. It can be seen, therefore, that the hallmarks of "essential fairness" are a full hearing *on the merits* with prior notice of the charges and an opportunity to defend against them.

Mr. Justice Douglas has written —

"It is not without significance that most of the provisions of the Bill of Rights are procedural. It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedure safeguards is our main assurance that there will be equal justice under law." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U. S. 123, 179, 71 S. Ct. 624, 652, 95 L. Ed. 817, 858 (1951).

The Supreme Court of the United States has held that when an important or protected interest is sought to be terminated, procedural due process requires notice and an opportunity for hearing appropriate to the nature of the case *before* the termination becomes effective. Bell v. Burson, 402 U. S. 535, 542, 91 S. Ct. 1586, 1591, 29 L. Ed. 2d 90, 96 (1971). The defendant city argues, however, that there is no constitutional right to public employment, and that the plaintiff, therefore, has no "protected interest" at stake. Board of Regents of State Colleges v. Roth, 408 U. S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). But compare: Wieman v. Updegraff, 344 U. S. 183, 73 S. Ct. 215, 97 L. Ed. 216 (1952); Slochower v. Board of Education, 350 U. S. 551, 76 S. Ct. 637, 100 L. Ed. 692 (1956).

This court is not prepared to say that the plaintiff's job is not a protected interest or that his interest in retaining it is not important. But even if that were so, there is a recognized exception that "[w]here a person's good name, reputation, honor, or integrity is

at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U. S. 433, 437, 91 S. Ct. 507, 510, 27 L. Ed. 2d 515, 519 (1971).

This principle applies here. The controversy regarding the plaintiff's performance of his job has raged for six to eight months. There have been charges and countercharges, press conferences, public rallies, disruption and interruption at commission meetings, secret tape recordings. Feelings have run high and tempers short. This case and the issues presented have produced more press coverage than any other proceeding the writer has ever handled. There have been frequent — at times daily — news stories, features, editorials, letters to the editor. The sheriff of Broward County officially and in the press has questioned the adequacy of law enforcement in the city of Hallandale, and questions have been raised as to jurisdictional disputes between the sheriff's office and the Hallandale police department, together with charges and countercharges of lack of cooperation and coordination of efforts. The spring term grand jury undertook an extensive investigation of the situation, and on March 6, 1975, filed a nine-page interim report which recognized the state of turmoil existing among the city commission, city manager, and chief of police, and recommended that "a full and total reorganization of the Hallandale police department's chain of command take place immediately." To supplement the record in this regard the court has obtained and does hereby receive and file as Court's Exhibit No. 1 a certified copy of the interim report of the grand jury dated March 6, 1975.

It would be blinking at reality to fail to recognize that all of this controversy and official, press and public attention have placed the plaintiff's good name, reputation, honor, and integrity directly on the line. Any decision by the city commission on his retention or removal will inevitably constitute a judgment either for or against him.

The discussions to this point have generated more heat than light. To date, there has never been a public hearing on the merits. If the city has its way, there never will be.

It can readily be seen that more is involved here than the question of whether the plaintiff is to be retained or removed. There is also the question of the plaintiff's right to a public forum to present his side of the case, to refute the charges, and to have his day in court — even if he is thereafter discharged. This is simply fundamental fair play, American-style. And that, in a word, is what procedural due process is all about.

This court concludes, therefore, that under the particular facts and circumstances of this case, the plaintiff is entitled to procedural

due process, that is — notice of the proceedings against him, an opportunity to defend himself, and a judgment consistent with essential fairness. Further, the court concludes that he is entitled to these rights prior to any decision as to his termination.

To grant such a hearing after the fact would be too late; the irreparable damage to his reputation would then have already been done. The same reasoning which supports the plaintiff's right to procedural due process also supports his right to the relief here sought. Because of the certainty of irreparable injury, the plaintiff has no adequate remedy at law and injunctive relief is necessary and proper.

IV

The remaining issues may be disposed of more easily.

The plaintiff's contention that he is entitled to the benefits of Chapter 174, Florida Statutes, 1971 (since repealed), when read *in pari materia* with the Hallandale Civil Service Act, is without merit. Chapter 174, which provided civil service for police and firemen in cities and towns of 125,000 population or less, required its approval by majority vote at a referendum election before it became effective. §§174.19 and 174.25. No such referendum was ever held. Nor does the Hallandale Civil Service Act, Ch. 30793, Special Laws of Florida, 1955, grant rights to the plaintiff on which he may rely. Sections 1 and 3 of that act, which was approved by referendum election, specifically exclude department heads from the operation of its provisions. Since no rights inure to the plaintiff when the two acts are read separately, they cannot be read together to create rights by implication which do not otherwise exist. This is not a case where the whole may be greater than the sum of its parts.

The affirmative defenses of the three defendant commissioners, that the court lacks jurisdiction, must likewise be rejected. The contention that the plaintiff has failed to exhaust his administrative remedies under §4 of the Law Enforcement Officers' Bill of Rights, §112.534, is rendered moot by the determination that the act does not apply to chiefs of police. In any event, the remedies there provided appear cumulative to the rights created by §2(3), §112.532(3), and to rights that exist generally to apply for injunctive relief. The other contention of these defendants, that the court lacks jurisdiction to enjoin the legislative body of the city, does not meet the issue presented. It is true enough that the court cannot substitute its judgment for the legislative judgment of the city commission, nor does it attempt here to do so. We can and do, however, direct the city commission in how it must go about making

that judgment. The difference between the two is the difference between substance and procedure, and it is only the mandate of procedural due process that the court here imposes.

For the same reason, the motion to dismiss, incorporated in the city's amended answer, must be denied. The court finds that the action is not premature and that it states a basis for injunctive relief. Judgment, therefore, shall issue forthwith.

Based on the foregoing, it is ordered and adjudged as follows —

1. The equities of this cause are with the defendants on the plaintiff's claim under the provisions of the Law Enforcement Officers' Bill of Rights, Chapter 112, Part VI, Florida Statutes, 1974 Supplement, §112.531, et seq. This statute does not apply to chiefs of police, and the plaintiff, therefore, is not entitled to the benefits and protections therein provided.

2. The equities of this cause are with the plaintiff on his claim to adequate notice of the charges preferred against him, a fair hearing on such charges, and a fair opportunity to defend against such charges. The plaintiff has no adequate remedy at law and he will suffer irreparable injury unless he is granted the injunctive relief requested.

3. The defendants Milton Weinkle, as mayor of the city of Hallandale, Jack Spiegel, as vice mayor, and Howard Forman, Ray Blystone and John Saunders, as commissioners, and defendant City of Hallandale, a municipal corporation of the state of Florida, be and they are hereby permanently enjoined from further proceedings to terminate the plaintiff, James R. Longo, as chief of police of the said city, except for good cause and under the following conditions—

a) That said defendants provide the plaintiff with adequate notice of the date, time and place of any meeting to be held to consider the plaintiff's termination as chief of police. For the purposes of this judgment, this shall mean at least five days prior written notice, not including Saturdays, Sundays, and holidays.

b) That said defendants provide the plaintiff with due notice of the charges preferred against him. For the purposes of this judgment, this shall mean a specific statement of the grounds for removal and an allegation of facts that support the grounds alleged.

c) That said defendants provide the plaintiff with a fair hearing on such charges and a fair opportunity to defend against such charges. For the purposes of this judgment, this shall mean a public hearing conducted in a fair manner, with the plaintiff having the right to be present and represented by counsel, to be confronted by

and to cross-examine the witnesses against him, and to present evidence on his own behalf.

4. The court retains jurisdiction of the parties and of the subject matter for the purpose of enforcing the terms and provisions of this final judgment, and to enter such other and further orders as may be necessary, proper or appropriate in the circumstances.