Mr. Robert Michael Eschenfelder St. Petersburg Assistant City Attorney Post Office Box 2842 St. Petersburg, Florida 33731-2842
Dear Mr. Eschenfelder:
You have asked substantially the following question:
Can a municipality create a citizens' board to investigate and make findings regarding a complaint filed against a law enforcement officer under Part VI, Chapter 112, Florida Statutes?
In sum:
The process for reviewing complaints against law enforcement officers established in Part VI, Chapter 112, Florida Statutes, makes no provision for public involvement until such time as the law enforcement agency employing the officer concludes its investigation with a finding either to take no disciplinary action or bring no charges, or to take disciplinary action or bring charges. The Florida Statutes are silent, however, as to the procedures to be followed after the law enforcement agency makes its finding.
According to your letter, the St. Petersburg Police Department has established and operates a system for the receipt, investigation, and determination of complaints received by that agency from any person. This function is handled by the Internal Affairs Division of the St. Petersburg Police Department. Upon completion of an investigation into a complaint against an officer, that officer's chain of command reviews the case and determines whether the officer has violated any city or department policies, and decides upon any discipline to be given.
Your question is whether Part VI, Chapter 112, Florida Statutes, would permit a citizens' board to be interjected into this process.
Part VI of Chapter 112, Florida Statutes,[1] is commonly referred to as "The Police Officers' Bill of Rights" or "The Law Enforcement Officers' Bill of Rights,"[2] and is designed to ensure certain rights for law enforcement and correctional officers.[3] As the court stated in Longo v. City ofHallandale,[4] Part VI of Chapter 112, Florida Statutes, applies only to "intradepartmental interrogation and investigation, and [has] as its purpose the protection of subordinate officers from `third degree' tactics by superior officers. . . ."[5] (emphasis supplied by the court.)
Section 112.532(1), Florida Statutes, requires that whenever a law enforcement officer or correctional officer, as defined in section112.531(1) and (2), Florida Statutes, is under investigation and subject to interrogation by members of the employing agency for any reason that could lead to disciplinary action, demotion, or dismissal, the interrogation shall be conducted under the conditions prescribed by the statute.[6] Section 112.532, Florida Statutes, also sets forth other rights and privileges possessed by law enforcement officers and correctional officers, including the establishment of complaint review boards;[7] the right of law enforcement officers and correctional officers to bring civil suits;[8] the right of law enforcement officers or correctional officers to have notice of disciplinary action;[9] and the prohibition against retaliatory action being taken against law enforcement officers and correctional officers who exercise their rights.[10]
Section 112.533(1), Florida Statutes (1996 Supplement), provides that "[e]very law enforcement agency and correctional agency shall establish and put into operation a system for the receipt,investigation, and determination of complaints received by such agency from any person." (e.s.) The requirements of the statute apply to complaints filed with the employing agency by any person, whether within or outside the agency.[11] This statute also provides that:
"A complaint filed against a law enforcement officer or correctional officer with a law enforcement agency or correctional agency and all information obtained
pursuant to the investigation by the agency of such complaint shall be confidential and exempt from the provisions of s.119.07(1) until the investigation ceases to be active, or until the agency head or the agency head's designee provides written notice to the officer who is the subject of the complaint, either personally or by mail, that the agency has either:
1. Concluded the investigation with a finding not to proceed with disciplinary action or to file charges; or
2. Concluded the investigation with a finding to proceed with disciplinary action or to file charges."[12]
Thus, the statute contemplates an integrated system for resolving complaints against law enforcement officers: receipt of the incoming complaint, an investigation of the substance of that complaint, and a determination of whether to proceed with disciplinary action or file charges.
Although section 112.533(2), Florida Statutes, establishes the composition of complaint review boards, it does not state when and how such boards should function.[13] Section 112.532(2), Florida Statutes, provides that:
"A complaint review board shall be composed of three members: One member selected by the chief administrator of the agency or unit; one member selected by the aggrieved officer; and a third member to be selected by the other two members. Agencies or units having more than 100 law enforcement officers or correctional officers shall utilize a five-member board, with two members being selected by the administrator, two members being selected by the aggrieved officer, and the fifth member being selected by the other four members. The board members shall be law enforcement officers or correctional officers selected from any state, county, or municipal agency within the county. There shall be a board for law enforcement officers and a board for correctional officers whose members shall be from the same discipline as the aggrieved officer. The provisions of this subsection shall not apply to sheriffs or deputy sheriffs."
Despite uncertainty concerning the function of complaint review boards, it appears that the Legislature did not intend for persons outside the employing agency to participate in the investigation and formulation of initial findings concerning a complaint against a law enforcement officer. The requirement of confidentiality for information generated by an investigation precludes the sharing of investigative material except with law enforcement agencies, correctional agencies, and state attorneys conducting criminal investigations.[14] In other words, the confidentiality requirements of Part VI, Chapter 112, Florida Statutes, prevent the participation of a citizens' board in resolving a complaint made against a law enforcement officer until the officer's employing agency has made its initial findings.
Part VI, Chapter 112, Florida Statutes, is silent as to the procedures to be followed once an employing agency has made a finding regarding a complaint filed against a law enforcement officer under section 112.533(1), Florida Statutes. However, no legislative action by a municipality may contravene, repeal or modify a preexistent civil service law, charter act, or general or special law affecting the rights of municipal employees, including municipal police.[15]
In sum, the complaint review process contemplated by Part VI, Chapter 112, Florida Statutes, is an integrated procedure involving the receipt, investigation and determination of complaints about law enforcement officers by the officers' employing agencies. No outside participation in this process is contemplated until such time as the employing agency makes its initial findings. At that time the information generated by the investigation is no longer confidential for purposes of citizen or other outside review.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Sections 112.531 through 112.534, Fla. Stat.
[2] See, e.g., Mesa v. Rodriguez, 357 So.2d 711 (Fla. 1978);Ragucci v. City of Plantation, 407 So.2d 932 (Fla. 4th DCA 1981).
[3] See, s. 112.532, Fla. Stat., which provides that "[a]ll law enforcement officers and correctional officers employed by or appointed to a law enforcement agency or a correctional agency shall have the following rights and privileges. . . ." And see, s. 112.531(1) and (2), Fla. Stat., respectively defining "[l]aw enforcement officer" and "[c]orrectional officer."
[4] 42 Fla. Supp. 53, 57 (17th Cir. Broward Co., 1975),affirmed, 331 So.2d 397 (Fla. 4th DCA 1976), cert. denied,341 So.2d 1080 (Fla. 1976).
[5] Cf., Op. Att'y Gen. Fla. 86-26 (1986).
[6] See, Ops. Att'y Gen. Fla. 86-91 (1986) and 75-41 (1975).
[7] Section 112.532(2), Fla. Stat.
[8] Section 112.532(3), Fla. Stat.
[9] Section 112.532(4), Fla. Stat.
[10] Section 112.532(5), Fla. Stat.
[11] See, Op. Att'y Gen. Fla. 93-61 (1993).
[12] Section 112.533(2)(a), Fla. Stat. (1996 Supp.).
[13] The courts and the Attorney General's Office have expressed frustration over the absence of any legislative direction regarding the type of system required by s. 112.533, Fla. Stat. (1996 Supp.), and the failure of the Legislature to specify the procedures that should be established to carry out the statutory responsibility delegated by the statute. See, e.g., Ujcic v. Cityof Apopka, 581 So.2d 218 (Fla. 5th DCA 1991); Op. Att'y Gen. Fla. 76-38 (1976); Inf. Op. of February 28, 1997, to Chief Dennis R. White.
[14] See, s. 112.533(2)(c), Fla. Stat.
[15] See, Ops. Att'y Gen. Fla. 86-91 (1986), and 76-38 (1976);Ragucci v. City of Plantation, 407 So.2d 932 (Fla. 4th DCA 1981).